J. H. BROWN v. WM. CHAMBERS ET AL.

(Case No. 1957.)

63  131|
83  128|
63  13ı
L90  453

1. DESCRIPTION.— A reference in a sheriff's deed to the county records generally for a description of land conveyed by the sheriff renders the deed void for uncertainty; the reference to the records for description and identification must be limited to the conveyances mentioned in the deed.

2. DEEDS.— As between private parties to a deed, the presumption will be indulged that some interest should pass; no such presumption can be indulged in favor of a sheriff's deed. If, from the description contained in a sheriff's deed, or if from deeds or instruments specifically referred to in the sheriff's deed, the land can be identified with reasonable certainty, the description is sufficient.

3. CASES REVIEWED.— Solomon v. Breazeal, 27 Ga., 200; Wilson v. Smith, 50 Tex., 369, and Kingston v. Pickins, 46 Tex., 101, reviewed.

4. AMBIGUITY.— When a latent ambiguity exists as to the description of land involved in a suit, the question should be submitted to the jury, under appropriate instructions, as a mixed question of law and fact.

5. EXECUTION LIEN.— When the issuance of an execution creates no lien on the debtor's property, the mere fact that the execution is held up by the creditor, unless it be so done in pursuance of a valid and binding agreement with the principal debtor, will not release the surety. (Citing Crawford v. Gaulden, 33 Ga., 173; Jerauld v. Trippet, 62 Ind., 122, and other cases.)

APPEAL from Cherokee. Tried below before the Hon. Peyton F. Edwards.

On February 13, 1879, this suit was brought by appellant to recover certain lands situate in Cherokee county. A writ of sequestration was applied for and issued at the same time. The respective parties claimed title as follows. Appellant claimed:

1. Common source deed or bond for title from G. W. Copeland and Wm. C. Daniel to Wm. Chambers and Clayton Williams.

2. Judgment of G. W. Copeland against Wm. Chambers and Clayton Williams on 24th September, 1858.

3. Execution, sale and deed of W. T. Long, sheriff, under same date of April 13, 1859, to G. W. Copeland as purchaser.

4. Judgment of supreme court, rendered May 21, 1860, affirming a judgment of the district court in Donley v. Duren et al., G. W. Copeland surety on the writ of error bond. Mandate issued and filed with the district clerk on June 22, 1860.

5. Successive executions on said judgment, and at last under execution issued March 18, 1868, land in controversy was levied on and sold as the property of G. W. Copeland and bought by S. P. Donley, to whom sheriff made deed.

6. Deed from S. P. Donley to Bonner & Bonner, dated July 8, 1868.

7. Deed from Bonner & Bonner to Wm. Chambers, dated September 6, 1871, and mortgage to secure the purchase money.

8. Mortgage with power of sale from Wm. Chambers to J. H. Brown & Co., dated 21st February, 1874. Taking up mortgage of Bonner & Bonner for foreclosure money, 9th December, from J. H. Brown as trustee under the mortgage of J. H. Brown & Co., dated 24th of April, 1878.

Defendants Birmah and Monte Chambers claimed title as follows to five hundred and thirty acres in controversy:

1. Bond for title from G. W. Copeland and W. C. Daniel to Wm. Chambers and Clayton Williams, made in 1857.

2. Deed from G. W. Copeland to Wm. Chambers, agent for minor children, to effect partition, dated September 19, 1861.

3. Deed from W. C. Daniel to Wm. Chambers, reciting full consideration previously paid to Daniel and Copeland, dated June 12, 1871.

Appellees pleaded not guilty, and also recovered for damages claimed to have resulted from the wrongful suing out the writ of sequestration.

The trial resulted in a verdict and judgment in favor of appellant for the one hundred acre tract of land, but against him for the five hundred and thirty acre tract, and also for $1,000 damages.

*M. J. Whitman*, for appellant, cited: Willis *v.* Lewis, 28 Tex., 191; Brown *v.* Chambers (Same Case, decided at Tyler Term, 1881); Mims *v.* Mitchell, 1 Tex., 445; Chandler *v.* Fulton, 10 Tex., 21 and 22; Hunter *v.* Morse, 49 Tex., 219; Farris *v.* Gilbert, 50 Tex., 350; Robertson *v.* Guerin, 50 Tex., 317; Bowles *v.* Beal, 60 Tex., 322, and authorities cited.

*Whitaker & Bonner*, also for appellant, cited: Hunter *v.* Clark, 28 Tex., 159, and cases cited; Brandt on Suretyship and Guaranty, § 382, and cases cited; Humphrey *v.* Hitt, 6 Gratt., 509; Shannon *v.* McMullen, 25 Gratt., 226; Jenkins *v.* McNeese, 34 Tex., 189; Parker *v.* Nations, 33 Tex., 210; Lane *v.* Scott, 57 Tex., 367; Burge on Suretyship, p. 206; Brandt on Suretyship, secs. 325 and 326; Comegys *v.* Cox, 1 Stewart (Ala.), 262; State Bank *v.* Edwards, 30 Ala., 512; Schenaller *v.* Parker, 24 Ala., 28; Bullitt *v.* Winston, 1 Munf. (Va.), 269.

*C. G. White*, for appellees, cited: King *v.* Russell, 40 Tex., 125; Riddle *v.* Bush, 27 Tex., 675; Freeman on Executions, secs. 356 and 365, and cases cited.

On insufficiency of description in sheriff's deed, he cited: Wooters v. Arledge, 54 Tex., 395, and authorities cited; Donnebaum v. Tinsley, id., 362; Rogers v. Bradford, 56 Tex., 630; Wofford v. McKinna, 23 Tex., 44; Freeman on Executions, secs. 281 and 330, and references.

WATTS, J. COM. APP.— Of the many questions presented by this voluminous record, those only which are deemed important and touching the merits of the case will be considered.

As against Birmah and Rial Smith and Monte Chambers, appellant relied upon the sheriff's sale and deed, made by virtue of the judgment of the supreme court affirming that of the district court, in the case of Donley v. Duren *et al.*

So far as this property was involved in that sale, the levy as indorsed upon the execution recites: " Levied the within *fi. fa.* on nine hundred and fifty acres of land known as the headright of L. Baker." " The above described land all lies in Cherokee county. Levied upon as the property of G. W. Copeland to satisfy this *fi. fa.* now in my hands, this March 20, 1868."

In the return of the sale as made by the sheriff the land is described as follows: " The interest of Geo. W. Copeland, being nine hundred and fifty acres more or less, in and to the Larkin Baker league of land in Cherokee county, as shown by deeds to and from said Copeland, now of record in the county clerk's office of said county, and which was purchased by S. P. Donley for $35."

And in the sheriff's deed to Donley the land is described as " nine hundred and fifty acres, more or less, in and to the Larkin Baker league of land in Cherokee county, as shown by deeds to and from said Copeland, now of record in the county clerk's office of said county, in book I, page 226, and book O, pages 653, 654."

That recorded in book I, page 226, is a deed from Baker and Baker by attorney in fact, Daniel, to Copeland, dated January 16, 1854, and describes the land conveyed in these words: " The one-fourth undivided interest of eleven hundred and seven acres of land belonging to the said Wm. N. Baker; also the like amount and interest of the said Morris A. Baker in and to a league of land granted to Larkin Baker, deceased, father of the said Wm. N. and M. A. Baker, as a colonist of the government of Coahuila and Texas, in Burnett's colony. The same lying and being situate in the said county of Cherokee and state aforesaid, as appears on the map of said county, except, however, six hundred and forty acres heretofore sold to one Pomeroy Carmichael, by said Daniel, attorney as aforesaid."

That recorded in book O, pages 653, 654, is a deed from G. P. Driven to Geo. W. Copeland, dated July 16, 1862, and describes the land as "all the right, title and interest that I have in and to the following described tract or parcel of land, to wit, the one-eighth interest in the Larkin Baker league of land lying in Cherokee county, near the town of Griffin, it being the half of Margaret Pickett's interest in said league, containing by estimation five hundred and fifty-three and one-half acres (553½), and for a more full description reference is had to a deed on record in the clerk's office of Cherokee county from William Roork, administrator of Bradbury's estate."

Now the record fails to show that the deed from Roork as trustee of Bradbury's estate to Geo. P. Driven contained any other than the following matters of description, to wit: "one-eighth interest in Larkin Baker league."

Upon that issue the court instructed the jury in effect that, as the levy and sale operated upon whatever interest Copeland had in the Larkin Baker league at the time, and as it appeared from the evidence that Copeland then owned the five hundred and thirty acres involved in this controversy, that therefore the land passed to Donley by reason of the sheriff's sale, deed, etc.

It will be observed that the interest of Geo. W. Copeland in the Larkin Baker league sold and conveyed by the sheriff to Donley is limited by the recitals in the sheriff's deed to the land as shown and identified by the two certain deeds therein referred to, one as recorded in book I, the other as recorded in book O.

On reference to these deeds it is readily seen that, from an inspection of their calls for description, this particular five hundred and thirty acres cannot be identified. But one of them calls for a third deed as matter of description and identification, but as its contents are not shown by the record, it is impossible to say that it furnishes any aid whatever in identifying the particular land.

In our opinion the reference to the county records for description and identification must be limited to the conveyances referred to in the sheriff's deed.

A reference by the sheriff in his deed to the county records generally, for a description and identification of the land sold and conveyed by him under and by virtue of writs of execution, could hardly be deemed sufficient. The sanction of such a practice would result in interminable difficulties in reference to the description of lands levied upon and sold under writs of execution, and would also result in a great sacrifice of landed property when offered at sheriffs' sales.

As presented by the record it does not affirmatively appear that

the land was so described in the sheriff's deed as to be susceptible of identification.

There is a broad distinction to be observed in the rules of construction applicable to deeds between private persons, and those of a sheriff made by virtue of an execution sale. As to the former it will be presumed that the parties intended an interest to pass by the conveyance; as to the latter no such presumption will be indulged, but the conveyance must contain such a description as will enable the purchaser to find and identify the land.

" The property," says a text writer, "ought to be described in the manner best calculated to give notice to the public of its location, extent, character and value." Freeman on Ex., § 285.

But that is not essential to the validity of the conveyance. For if, from the description contained in the sheriff's deed, or deeds or instruments therein referred to, the land can be found and identified with reasonable certainty, then the conveyance will be sustained.

As said by Martindale in his work on conveyancing, section 108, " where a deed refers to another deed, or a map, or a survey, it has the effect to incorporate such deed, map or survey into the description, the same as if copied into the deed itself, and what is therein described will pass."

And in Solomon v. Breazeal, 27 Ga., 200, it was held that a sheriff might refer in his conveyance, for a description of the land conveyed, to a deed on record.

In Wilson v. Smith, 50 Tex., 369, in speaking of a sheriff's deed the court said, " certainly the deed cannot be pronounced void upon mere inspection; for it cannot be said that it appears from the face of the deed that the land conveyed cannot be identified by the aid of extrinsic evidence."

While in Kingston v. Pickins, 46 Tex., 101, Justice Moore remarked: " The construction of a deed, being matter of law, is for the court. If, therefore, the land intended to be conveyed by it be so inaccurately described that it appears, on inspection of the deed, the identity of the land is altogether uncertain and cannot be determined, the court should pronounce it void; but where the uncertainty does not appear upon the face of the deed, but arises from extraneous facts, as in other cases of latent ambiguity, parol evidence is admissible to explain or remove it. In such case the deed should not be excluded from the jury, but should go to them along with the parol evidence to explain or remove such ambiguity; and the identity of the land is then a mixed question of law and fact, to be determined by the jury under the instructions of the court."

Here no latent ambiguity appears to exist; at least its existence is not shown by the record. The only matter of description and identification contained in the deed, aside from the statement of the number of acres, the name of the survey and where situated, is the reference to the two conveyances then of record. And these, unaided, fail to give such matter of description that would lead to the identification of the land. But one of these also refers to a third deed, and if that contains any matter of description or identification which would aid the Donley deed, it has not been made to appear.

Upon that point the court erred in the charge. If, upon the production of the other deed, it should appear to the court as identifying the land with reasonable certainty, then the charge might so declare; but if not, and from all these conveyances a latent ambiguity exists as to the description and identification of the land, then that question should be submitted to the jury under appropriate instructions, as a mixed question of law and fact.

Upon the trial the court below submitted the issue as to whether or not Donley, by extending time to Duren and others, released Copeland, the surety. And the jury specially found that Copeland was so released from the judgment.

It appears that Donley received a payment from Duren on the judgment and directed the sheriff to return the execution, to be held up under his direction. There is no evidence of any contract by and between Donley and Duren, by which time was extended to the latter. So far as presented it seems that by the return of the execution, which had not been levied, that it was only a matter of forbearance on the part of Donley, who could have had another execution issued at any time.

Appellees claim that the execution was returned by Donley, or rather at his direction; that the principal debtors then had sufficient property out of which the debt could have been made, but that such property had become unavailable. That, therefore, Copeland was released by the return of the execution.

Two cases are cited as supporting that proposition, to wit: Parker v. Nations, 33 Tex., 210, and Jenkins v. McNeese, 34 Tex., 190. In these cases the doctrine is distinctly announced, that the surety is discharged when the creditor takes out execution against the principal debtor and has it returned unexecuted.

In some of the states the issuance of an execution creates a lien upon the property of the debtor, and in such cases it is generally held that if the execution is returned at the direction of the cred-

itor, and that the property of the principal debtor then available cannot be subjected to the judgment, to the extent of the value of the property thus lost the surety will be released.

But when the issuance of the execution creates no lien upon the debtor's property, the fact that the execution is held up by the creditor, unless in pursuance of a valid and binding agreement with the principal debtor, will not release the surety.  Crawford v. Gaulden, 33 Ga., 173; Lumsden v. Leonard, 55 Ga., 374; Summerhill v. Tapp, 52 Ala., 227; Jerauld v. Trippet, 62 Ind., 122; Manice v. Duncan, 12 La. Ann., 715; Brandt on Suretyship, etc., sec. 382, and authorities cited in note 3.

The same doctrine is distinctly announced in Hunter v. Clark, 28 Tex., 163, and it is there in effect said that the surety has the remedy in his own hands; he can pay the debt and then control the writ in whatever way he may deem best.

There is no binding contract shown by the evidence for an extension of time by Donley to Duren and others.  Nor did the issuance of the execution create any lien which was lost by its return. Then, following the rule established by the great weight of authority, it appears that the verdict finding that Copeland had been released by the return of the execution is not supported by the evidence.

In response to a special issue submitted by the court, the jury found that Chambers had paid Copeland for the land, to his satisfaction, prior to the execution of the writ of error bond August 26, 1859.

And from that result it seems to have been considered that no title passed to Copeland by reason of the sheriff's sale and deed, made by virtue of the judgment in favor of Copeland and against Chambers and Williams.

As to that question it is sufficient to remark that there is no evidence showing that judgment to have been paid before the sale by the sheriff to Copeland.  Nor does it appear that the claim upon which that judgment was rendered had any reference whatever to the land in controversy.

From the record it seems that the title to the land passed to Copeland by virtue of the sheriff's sale and deed, and it is not made to appear that it was divested until after the execution of the writ of error bond in the case of Donley v. Duren and others.

It should perhaps be remarked that if the claim upon which the judgment was rendered had been paid before the rendition of the judgment, then, to be available, that defense should have been asserted in that case.

In conclusion we feel called upon to remark that the statement of facts, as agreed upon by the parties and certified by the court, was made up without regard to the rules. Depositions, including questions as well as answers, are copied into the record; so with judgments, conveyances and other instruments, many of them having but little connection with the questions at issue. The statement of facts thus prepared is made to cover one hundred and sixty-four pages of the record; whereas, if it had been prepared in accordance with the rules of court, it would not perhaps have covered more than twenty-five pages of the transcript. Such flagrant disregard of the rules but imposes much useless labor upon the court, which ought to have been avoided by following the rules in the preparation of the statement of facts.

Our conclusion is that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered January 26, 1885.]