## C. W. HAHL ET AL. v. JOHN J. McPHERSON.

Decided December 12, 1910.

1.—Appeal—Statement of Facts—Agreement—Construction.

Parties to a suit prepared and signed an agreement as to certain facts, which on appeal was incorporated in the statement of facts; in addition to this, the plaintiff on the trial offered certain evidence consisting of letters, depositions and oral testimony, which was also incorporated in the statement of facts, but as to which the defendant objected when offered in evidence on the ground of irrelevancy; the trial being without a jury, the court suspended his ruling upon the objection until the evidence was all in, when the defendant's objection was sustained (these matters appear from statements embodied in the statement of facts); the paper filed as a statement of facts, including all the evidence, that agreed to and that objected to, is agreed to by counsel as a "true and correct statement of all the evidence introduced *and offered* on the. trial of the case." Held, the appellate court could consider only that portion of the evidence which had been agreed upon and embodied in the statement of facts; and this, though many of the court's findings of fact were based upon the excluded evidence.

2.—Contract—"Owner of Land"—Meaning of Term.

A purchaser or vendee of land, in possession of the same, is the "owner" of the land, in the ordinary acceptation of the term; and this, though the land is encumbered by an express vendor's lien and a suit is pending by the holder of the vendor's superior title to rescind the sale and recover the land. Hence, a contract to secure from "the owner" of certain land an agreement concerning the same, is met and fulfilled when the agreement contracted for is executed by the vendee in possession.

3.—Same.

H. & Co. bought a body of land and gave their notes for a large part of the purchase money which were secured by the vendor's lien expressly retained; H. & Co. sold the land to C., who in turn constituted H. & Co. his exclusive agents for the sale of the same; H. & Co. gave an option contract to P. for a certain length of time; when the time was about to expire, H. & Co. entered into a contract with P. by which they agreed to procure a written extension of

the option, "said extension to be binding upon said H. & Co. and the owners of said land, and to be sufficient to fully extend said contract and protect the said P. in the full exercise and enjoyment of said contract and its terms"; within the time stipulated, H. & Co. presented to P. an extension contract signed only by themselves and by C.; in the meantime suit had been instituted by the owner of the outstanding vendor's lien notes executed by H. & Co., to rescind the sale and recover the land; P. refused to accept the extension contract, presented by H. & Co., as a compliance with their agreement, and filed suit to recover a forfeit put up by H. & Co. Held, the extension contract procured by H. & Co. and offered to P. was a fulfillment of their contract. The execution of the same by C. was an execution by the "owner," and H. & Co. were not required to procure from the holder of the vendor's lien an agreement to the extension contract.

Appeal from the District Court of Harris County.    Tried below before Hon. W. P. Hamblen.

*L. B Moody* and *L. A. Kottwitz,* for appellants.—Appellants having complied strictly with their undertaking, for the securing of which said $2000 was deposited, appellee had no further claim upon it, and it should have been returned to appellants.    Liverpool & L. & G. Insurance Co. v. Ricker, 31 S. W., 251; Security Mortgage & Trust Co. v. Caruthers, 32 S. W., 841; Stephens v. Motl, 82 Texas, 86; Carey v. Starr, 56 S. W., 325; Willis & Bro. v. Somerville, 3 Texas Civ. App., 513; Minter v. Burnett, 38 S. W., 353; Douglas v. Blount, 67 S. W., 489.

*C. R. Wharton,* for appellee.

REESE, ASSOCIATE JUSTICE.—On September 10, 1908, C. W. Hahl & Co., a firm composed of C. W. Hahl and F. A. Connable, entered into a written contract with J. J. McPherson by the terms of which McPherson was granted an option to purchase, on certain terms and for a limited time, all or portions of a large body of land in Bee County which Hahl & Co. had purchased of R. E. Nutt in 1905 and had afterwards, in 1908, sold to W. J. Candlish. After this sale Candlish had, by written contract, appointed Hahl & Co. exclusive agents to sell the property. Under the terms of the contract between Hahl & Co. and McPherson, McPherson was to advertise the land at his own expense, and he did so, expending on this account $3000. On February 23, 1909, a written contract was entered into between Hahl & Co. and McPherson by the terms of which Hahl & Co. bound themselves to procure and deliver to McPherson by March 5th an extension of the contract of September 10, 1908, such extension "to be binding upon Hahl & Co. and F. A. Cannable and the owners of the land, and to be sufficient to fully extend said contract and protect the said McPherson in the full exercise and enjoyment of said contract and its terms." Hahl & Co. deposited this agreement with the South Texas National Bank and with it the sum of $2000 which, as provided in said written agreement last aforesaid, represented a portion of the expenses incurred by McPherson in advertising the land under the original contract,

and which was to be paid to McPherson upon the failure of Hahl & Co. to deliver, within the time stated, such extênsion. At or before the expiration of the time limited, Hahl & Co. delivered to McPherson an instrument of writing signed by themselves and W. J. Candlish which they claimed to be a compliance with their contract. McPherson did not so consider it, and, claiming that Hahl & Co. had failed to comply with their agreement in the contract of February 23, 1909, brought this suit against Hahl & Co. and the South Texas National Bank to recover the $2000, with interest from March 5, 1909. To the action as against it, the bank pleaded that it was a stake-holder merely and ready to abide the judgment of the court in the premises. Hahl & Co. demurred generally, pleaded the general issue, and specially that it had complied with its contract of February 23d. The case was tried without a jury, resulting in a judgment for plaintiff for the amount claimed, from which judgment the defendants Hahl & Co. appeal. The trial court prepared and filed conclusions of fact and law.

At the threshold of the case we are met with a peculiar condition in regard to the evidence. The parties prepared and signed an agreement as to certain facts, which is set out in the statement of facts, covering pages 1 to 14. In addition to this appellee offered certain evidence consisting of letters, depositions and oral testimony, covering pages 15 to 39 of the statement of facts, all of which was objected to by appellants as immaterial and irrelevant and because it did not affect the issues in the cause. As to the objection, it appears from a statement embodied in the statement of facts that the court held "that as the cause was being tried by the court without a jury, he would hear all the evidence offered, and would make his ruling as to its relevancy and materiality after all the evidence was in; and after the evidence was concluded he held all the testimony to be immaterial to any issues in the case." This statement, showing the objection of appellant and the ruling of the court, immediately follows the agreed statement referred to on pages 1 to 14 and immediately precedes the other testimony referred to on pages 15 to 39. The paper filed as a statement of facts (including all of the evidence, both that agreed to and that objected to) is agreed to by counsel as a "true and correct statement of all the evidence introduced *and offered* on the trial of the case." In this state of the record we can not agree with counsel for appellee that the evidence objected to can properly be considered. It is insisted that the evidence was not "excluded." The court sustained appellants' objection to it, as shown by the statement of facts itself, and it appears to have been inserted in the statement of facts in connection with this ruling as part of the evidence *offered.* The effect of the ruling was necessarily to exclude it. Otherwise, what became of appellants' objection? Certainly he could not have taken a bill of exceptions to the court's ruling sustaining his objections. A further anomaly appears in the fact that a large part of the court's findings of fact rests entirely for support upon this excluded evidence, and in undertaking to support these findings appellee in his brief refers to and quotes liberally there-

from. As the case is presented to us, we must confine ourselves to the evidence set out in the agreed statement of evidence referred to.

The material facts so shown, are in substance, as follows: . The land referred to is part of the R. E. Nutt ranch in Bee County, which was sold and conveyed by Nutt to Hahl & Co. in 1905, and in 1908 conveyed by Hahl & Co. to W. J. Candlish who, by writing executed by him, appointed Hahl & Co. his exclusive agents to sell the same. On September 10, 1908, Hahl & Co. entered into a written contract with McPherson, acting for himself and others, with regard to a part of this land. This agreement is very long and contains many complicated provisions, but the substance of it is that Hahl & Co. gave to McPherson and his associates an option to buy the land, or parts thereof, upon certain conditions and for a certain price. McPherson was to have four months from date of the contract to purchase and make payment of a certain 640 acres. If they did so they were to have two months longer to purchase an additional 1000 acres. If they did this, they were to have an additional two months in which to purchase a second 1000 acres, and so on until they had purchased the whole of the land. McPherson was to advertise the land, which he did, at his own expense, expending therefor $3000. Upon compliance with the terms of the contract Hahl & Co. were to execute or have executed general warranty deeds. We only state the parts of this long and intricate contract necessary to an understanding of the questions presented on this appeal.

On February 23, 1909, there being a dispute as to whether said option had expired, Hahl & Co. and McPherson entered into a written contract by the terms of which Hahl & Co. agreed to procure and to deliver to McPherson in ten days (or by March 5th) a written extension of the contract referred to above, for ninety days, in all respects extending and ratifying said contract, "said extension to be binding upon said Hahl & Co. and C. W. Hahl and F. A. Connable and the owners of said land, and to be sufficient to fully extend said contract and protect the said McPherson in the full exercise and enjoyment of said contract and its terms." It was agreed, as set out in said contract, that Hahl & Co. should deposit in the South Texas National Bank $2000, representing a part of the expense incurred by McPherson in advertising the land as provided in the original contract, this amount to be paid to McPherson's attorney for him if Hahl & Co. failed to deliver the extension contract referred to by March 5th. Within the time limited Hahl & Co. procured and offered to McPherson as a compliance with their contract an instrument in writing extending the original contract for ninety days from March 5, 1909, signed by Hahl & Co. and W. J. Candlish. This instrument McPherson refused to accept as a compliance with the contract.

At the time this agreement to procure the extension contract was entered into and at the date of the original contract, Hahl & Co. were not the owners of the land, but, having bought it from Nutt, they had sold it to Candlish. The land was heavily encumbered with vendor's and judgment liens for large amounts, as hereafter shown.

The original purchase money notes, given by Hahl & Co. to Nutt, amounted to about $40,000, secured by the express vendor's lien on the land, were outstanding in the hands of one, McCampbell, who had instituted suit thereon and to enforce the vendor's lien, and on February 15th by amended petition had set up the superior title, and sought to recover the land. Afterwards, on July 1, 1909, judgment was rendered in this case (as stated in the court's findings) foreclosing the liens and for title and possession, including all the lands embraced in the contract with McPherson. In addition to this there were several judgment liens for large amounts against Hahl and Connable, but all of these judgments were fully released as to this land on February 23, 1909, except one for $17,500 in favor of E. M. Paulsen, which the court's findings states has been fully released, without saying when.

The findings of fact of the trial court, in addition to the above, embrace many other facts evidently based upon the excluded evidence, and which, as they find no support in the evidence which we can consider, are not adopted by us.

The issue presented is whether the instrument extending the original contract, signed by only Hahl & Co. and W. J. Candlish, is a compliance with the agreement of February 23d, and this depends upon whether it is binding upon C. W. Hahl and F. A. Connable, and Hahl & Co., and upon the owners of the land, and sufficient to protect McPherson in the full exercise and enjoyment of the original contract and its terms.

The assignments of error from one to four present the general proposition that the court erred in its conclusion of law that the extension contract offered by appellants was not such contract as they had agreed to procure and deliver, and therefore erred in holding that appellee was entitled to recover the money.

The court finds that Candlish was shown to be the owner of the land. But it is insisted by appellee (and this seems to have been the basis of the court's judgment), that on account of the existence of the express vendor's lien, upon which suit was pending, and the assertion in that suit of the right to recover the land upon the superior title of the vendor, this extension contract should have been made binding upon the holder of the vendor's lien notes and superior title, and that on account of the failure to have it so made, and also on account of the encumbrances on the land, against which appellee was in no way protected by the contract signed only by Hahl & Co. and Candlish, this extension contract was not sufficient to protect appellee "in the full exercise and enjoyment of the original contract and its terms."

In the light of the evidence referred to, what do those terms and expressions mean? There are no allegations in the petition that they bear other than the ordinary signification, or that they were understood by the parties in any other sense, or that by mutual mistake this contract, drawn by appellee's attorney, failed to express the meaning and intention of the parties. We think it clear that the contract having been executed by Candlish, it was binding on the owner of the land.

The trial court found that Candlish was the owner. He was none the less the owner, in the ordinary meaning of the term, because his vendor had not paid the purchase money, and there was outstanding an express vendor's lien, carrying with it the right of rescission and of recovery of the land. The holder of these rights had gone into court to seek a foreclosure of the vendor's lien, and also, as the statement of facts puts it, recover the land, which could only be by a judicial declaration of rescission. Until this was had, whatever title was conveyed by the deed remained in Candlish and constituted him the owner of the land. Stephens v. Motl, 82 Texas, 86; Turner v. Cross, 83 Texas, 225; Liverpool & L. & G. Ins. Co. v. Ricker, 10 Texas Civ. App., 264 (31 S. W., 251); Security Mort. & Trust Co. v. Caruthers, 11 Texas Civ. App., 430 (32 S. W., 841). At any time before actual rendition of judgment for the land in the suit referred to, Candlish had the right by payment of the purchase money to extinguish the superior title and this right of rescission. So the right to rescind and recover the land was not an absolute right. (Weems v. Masterson, 80 Texas, 55.)

But it is further insisted that, on account of the encumbrances upon the property, the contract of extension signed only by Hahl & Co. and Candlish was not sufficient to protect appellee in the full exercise and enjoyment of the original contract and its terms. This is, in a sense, true. To do this it would have been necessary to have some sort of agreement with every one holding any lien or encumbrance on the property, such as would have prevented the assertion of such liens against this property, or a discharge of those liens by Hahl & Co. It must be remembered that these liens existed upon this land at the date of the original contract and interposed the same obstacle to the exercise and enjoyment of that contract as of the extension thereof. So to have appellee stipulate for such an extension as would be sufficient to protect him in the exercise and enjoyment of the original contract, it can not be assumed that he was stipulating for an agreement that would protect him against all lien holders, and thus give him rights far greater than those he took under the original contract. Can it be thought that with these various liens in their mind, it was intended by this general phrase, in connection with the stipulation that the contract should be binding only on Hahl & Co. and Candlish, the parties intended that Hahl & Co. should either pay off and discharge all of these liens, or get such contract from the holders thereof as would protect appellee from their assertion against this land? Would the parties have left such important and far-reaching provisions to be dug out of the general provision referred to? Giving to this language its ordinary meaning (and there is no claim that it was used otherwise), and interpreting the entire language of this provision of the contract, it seems to us to mean that the contract should be binding on Hahl & Co. and the owner of the land, that is, Candlish, and should be so drawn and executed as that it should protect appellee in the exercise and enjoyment of the original contract against the parties who were

required to execute it. If there was anything in the circumstances under which this contract was executed to indicate that the parties understood this contract to bind Hahl & Co. to get such an instrument as would protect appellee against these liens, it is not alleged in the petition nor shown by the evidence, which shows only the existence and assertion, in a pending suit, of the vendor's lien and right to rescind and recover the land, all of the other liens having been discharged. It may be that the evidence which the court evidently made the basis of its findings and which appellee in his brief relies upon to support them, would put a different view upon the matter, but we are precluded, we think, as stated *in limine,* from going into this evidence.

Complaint is made by the fifth assignment of error to the court's finding that Hahl & Co. represented themselves as the owners of the land, and that by the terms of their contract they gave appellee the sole and exclusive agency for the sale of the land, because there is no evidence to support these findings. This assignment must also be sustained. The contract itself was in no sense an agency contract, but an option to purchase.

The sixth assignment of error, complaining of certain findings of fact, must also, we think, be sustained necessarily as the evidence relied upon to sustain the finding is only found in that part of the evidence objected to by appellant, which objection was sustained.

The court was also in error in the finding referred to in the seventh assignment of error, that appellant was to procure an extension binding upon all persons owning or *claiming* the land. Such are certainly not the terms of this contract.

It may be, as stated by appellee in his brief, that this whole transaction was conceived in fraud and born in iniquity, and it is possible that the excluded evidence establishes this, but as the case is presented to us we hold the assignments of error well taken, for which the judgment is reversed and the cause remanded.

*Reversed and remanded.*