### McPHERSON v. C. W. HAHL & CO.

(Court of Civil Appeals of Texas. El Paso. Nov. 7, 1912. Rehearing Denied Nov. 27, 1912.)

CONTRACTS (§ 176*) — CONSTRUCTION — EVIDENCE—QUESTION FOR JURY.

In an action to recover defendant's portion of certain expenses for the advertising of certain farm lands because of defendant's alleged failure to procure for plaintiff an option extending a prior contract of sale, evidence *held* to require submission to the jury of the question whether a provision in the agreement to procure the extension, that it should be sufficient to protect plaintiff in the full exercise and enjoyment of the original contract and its terms, required defendant to obtain proper agreements and releases from the holders of superior liens against the land so that a merchantable title thereto could be conveyed.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 767–770, 917, 956, 979, 1041, 1697, 1825; Dec. Dig. § 176.*]

Error to District Court, Harris County; Wm. Masterson, Judge.

Action by John J. McPherson against C. W. Hahl & Co. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

C. R. Wharton, of Houston, for plaintiff in error. L. B. Moody and L. A. Kottwitz, both of Houston, for defendant in error.

HIGGINS, J. This is an action for the recovery of $2,000 deposited in escrow with the Houston National Bank, and is the second appeal; Judge Reese's opinion upon the previous appeal being reported in 133 S. W. at page 515, where a full and complete statement of the case is made, and we will therefore not restate the same further than as may be rendered necessary by an amendment to plaintiff's petition filed subsequent to the former appeal. As we construe Judge Reese's opinion, he held that, under the state of pleadings and such of the evidence as could properly be considered a part of the statement of facts, the trial court erred in holding the agreement of date February 23, 1909, did not require the extension agreement called for therein to be binding upon any one other than Hahl & Co. and upon the owner of the land, W. J. Candlish. The court did not hold the clause of the contract, the meaning and scope of which was in issue, to be unambiguous, but emphasizes the fact that there were no allegations in the petition that the terms in the agreement, "in the full exercise and enjoyment of the contract and its terms," bore other than the ordinary signification, or that they were understood by the parties in any other sense, or that by mutual mistake the contract failed to express the meaning and intention of the parties, and they further state, "if there was anything in the circumstances under which this contract was executed to indicate that the parties understood this contract to bind Hahl & Co. to get such an instrument as would protect appellee against these liens, it is not alleged in the petition nor shown by the evidence, which shows only the existence and assertion, in a pending suit, of the vendor's lien and right to rescind and recover the land; all of the other liens having been discharged. It may be that the evidence which the court evidently made the basis of its findings, and which appellee in his brief relies upon to support them, would put a different view upon the matter; but we are precluded, we think, as stated in limine, from going into this evidence."

The amendment to the plaintiff's petition, upon which it was last tried, contains the following allegations: "That at the time this contract was executed, neither plaintiff nor his attorneys knew with any accuracy the state of the title to these lands; they had never seen an abstract of the title, and the only information they had with reference thereto was from rumor and from statements made by defendants; that the defendant C. W. Hahl represented that, on the day following the execution of the supplemental agreement heretofore copied in this pleading, he was going to consummate a transaction that would enable him to place the lands in plaintiff's hands for sale, free from any imperfection as to title, and that the title would be in good and satisfactory condition, and that the extension of the contract which he was to procure under this supplemental agreement would be sufficient to protect the plaintiff and his associates in the full exercise and enjoyment of the contract in all its terms. By this expression it was meant and understood that the defendants would procure an extension of the contract, binding upon the owners of the superior title to the land, whoever they might be, or would

exhibit releases of any liens or incumbrances that might be menacing sale or foreclosure of the land, and it was especially understood that the defendants were to procure the concurrence of certain clients of Messrs. Cocke & Cocke, attorneys of San Antonio, who held certain liens against the land, the names of these clients not being divulged to the plaintiff or his attorneys at the time of these negotiations, and since neither plaintiff nor his counsel was familiar with the details of the title or the nature and extent of the imperfection that existed in it, if any, or the nature and extent of the liens that might be against the land and subjecting it to sale, these things were not enumerated or set out at length in the contract, but, under the assertions of the defendants that all of the objections to the title would be obviated in such way that the sales could go forward without interruption, and that plaintiff and his associates could make sales and deliveries of the land free from objections on account of the title, it was written in the contract of the 23d of February, 1910, that this extension agreement to be procured would be sufficient to fully extend the original contract and protect the said McPherson and Prudential Land Company in the full exercise and enjoyment of the contract and its full terms, which meant, and was so understood by the parties thereto to mean, that defendants were then entering into various negotiations and arrangements, the full nature of which were not disclosed to plaintiff or his counsel, and the names of the parties with whom had were not disclosed to the plaintiff or his counsel, but that, under these arrangements then going forward and in process of early completion, the title to the lands would not only be left in good condition and be made acceptable to plaintiff and his counsel and any purchaser that plaintiff might have for the lands, but the title to the land would be in fact made good and merchantable."

As we construe the opinion of Judge Reese and, as heretofore stated, the Galveston court did not hold the clause "in the full exercise and the enjoyment of the original contract and its terms" was unambiguous, but upon the contrary we think they clearly intimate that, under proper allegations supported by proper proof, it was a question of fact whether or not this clause would have required Hahl & Co. to obtain from the holders of the vendor's lien and other superior liens agreements whereby plaintiff, McPherson, would have been fully protected in the exercise of the original contract and its terms, and under the paragraph of the plaintiff's petition above quoted, we think it was permissible to show these facts; the language quoted being ambiguous.

Upon trial before a jury, the court gave a peremptory instruction in favor of Hahl &

Co., and the material question involved upon this appeal is whether or not an issue is raised by the testimony as to what was understood and meant by the parties by the clause above quoted, the meaning of which is in dispute. The nearest approach to any testimony showing that it was contemplated by the parties that this clause was intended to require Hahl & Co. to obtain proper agreements from the lienholders is that of the witness Thos. P. Fenlon of Kansas City, attorney for McPherson, and of Mr. Wharton, likewise Mr. McPherson's attorney, who drew the agreement sued upon, and the testimony of Mr. Cocke of San Antonio, an attorney for one of the lienholders.

Mr. Fenlon testified as follows: "Hahl represented to Mr. Wharton and myself, at the time this supplemental contract was drawn in Mr. Wharton's office, that he was perfecting an arrangement by which all liens would be lifted from this land before March 5, 1909, and stated that he was going to San Antonio on the night of the 23d of February, 1909, the date upon which this supplemental contract was signed, for the purpose of negotiating a deal which would leave the land entirely free and enable him to procure us the extension called for in this supplemental contract referred to. Mr. Hahl was told by both Mr. Wharton and myself that unless he had these liens extinguished, or procured an agreement from the holders of these liens, and especially from the holders of the superior title, that the extension of the contract would be useless to us; that we could not sell the land unless we could represent to our clients that the title was merchantable. Mr. Hahl assured us that there would be no trouble on this score, and was given a copy of this supplemental contract, which he was to show to Cocke & Cocke at San Antonio, Tex., attorneys for P. E. Blalack, and with whom Hahl said he was negotiating. Mr. Hahl undertook to procure the consent of these parties to this extension, with the understanding that, if it was not procured, the extension would be worthless, and that we would be unable to handle the land under the contract of September 10, 1908, or any extension thereof."

Wharton testified: "We told Hahl we would sue him for breach of contract on account of the money we had spent unless we got an extension on the contract that was made by our clients with him. I asked him about the title to the land, as I had no abstract; he said the abstracts were in San Antonio, but that title would be fixed up all right; that he was going to San Antonio that night, to see some lawyers there, and they were going to fix up the title to the land. We discussed some of the matters with reference to the land—that is, some judgment liens—and Mr. Hahl said those liens would all be released, or, if not released, would be

left in such shape that anybody else holding any liens against it would agree to this extension. He did not go into detail as to exactly what he was going to do; seemed to be in considerable of a hurry; said he had to get out of town that night. The contract was drawn up, and several copies were made; one of the copies was put in the bank with the $2,000; one of the copies was taken by Mr. Hahl to San Antonio, where he agreed to show it to Cocke & Cocke, and get them or their clients to agree to the extension if the liens were not extinguished."

Cocke testified: "We had certain negotiations with Hahl & Co. in January and February, 1909, by which we purchased from Hahl & Co. about $51,000 in vendor's lien notes held by Hahl & Co. against the northern portion of the Nutt pasture in Bee county. These were second vendor's lien notes, and were subject to another set, which had been theretofore executed by Hahl in favor of Nutt, the original owner of the land. The notes we purchased were secured by a deed of trust and vendor's lien on the land. I know there was some conversation about it, and I am sure that Hahl told us he would have to lose this $2,000 in order to get rid of the controversy with McPherson. I do not know whether Hahl made a formal request for our concurrence in the contract, but, if he did not do so, it was because he had been told in advance that neither we nor our clients would concur in the extension agreement in the manner proposed and under the conditions proposed. Hahl told us he had agreed to get our concurrence in this extension, or, in lieu thereof, lose $2,000 then in the Houston bank."

We think the testimony quoted sufficient to raise the issue of whether or not it was contemplated and understood by the parties that Hahl & Co. were required to obtain proper agreement or releases from the holders of the superior liens by the clause in the contract of February 23d that the extension contract to be secured by Hahl & Co. should be sufficient to protect McPherson in the full exercise and enjoyment of the original contract and its terms. The testimony which we have quoted is not entirely clear and satisfactory to our minds that the clause was so understood and interpreted by the parties, as neither Wharton nor Fenlon testify directly to that effect, but we think it sufficient to have raised an issue to be submitted to the jury, and therefore hold that the court erred in giving a peremptory instruction for the defendant. The fourth assignment is not considered. It is not supported by a proposition and is not a proposition within itself.

Reversed and remanded.

HARPER, C. J., did not participate in this case.