HAHL et al. v. McPHERSON. (No. 6760.)

(Court of Civil Appeals of Texas. Galveston. March 24, 1915. On Appellee's Motion for Rehearing, April 21, 1915. On Appellants' Motion for Rehearing, May 6, 1915.)

1. EVIDENCE ⬥➡448—WRITTEN INSTRUMENTS —PAROL EVIDENCE TO EXPLAIN.

Where an instrument is ambiguous in some of its expressions, testimony by those who drew it is admissible to aid in its construction.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082, 2084; Dec. Dig. ⬥➡ 448.]

2. TRIAL ⬥➡85—EVIDENCE—OBJECTIONS.

Where evidence was in part material, a general objection of immateriality will not warrant its exclusion.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 222–225; Dec. Dig. ⬥➡85.]

On Appellee's Motion for Rehearing.

3. VENDOR AND PURCHASER ⬥➡352—OPTION TO PURCHASE LAND — ACTIONS — INSTRUCTIONS.

Where defendants, who had given plaintiff an option to purchase land, agreed to procure an extension of the contract binding upon the owners of the superior title to the land, a charge that the only question in the case was whether defendants agreed to procure the consent and concurrence of the owners of the superior title, including the holders of vendors' liens, while possibly not technically correct, is sufficient.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 1059; Dec. Dig. ⬥➡ 352.]

4. VENDOR AND PURCHASER ⬥➡352—OPTION— ACTION FOR BREACH—VERDICT.

A verdict in response to the charge that defendant did undertake to procure the consent of the holders of the superior title will warrant a judgment for plaintiff.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 1059; Dec. Dig. ⬥➡ 352.]

Appeal from District Court, Harris County; William Masterson, Judge.

Action by John J. McPherson against C. W. Hahl and others. From a judgment for plaintiff, defendants appeal. Affirmed.

See, also, 151 S. W. 323.

L. B. Moody, of Houston, for appellants. Baker, Botts, Parker & Garwood, of Houston, for appellee.

LANE, J. This suit was originally instituted by John J. McPherson against C. W. Hahl and F. A. Connable, parties composing the firm of C. W. Hahl & Co., and the Houston National Bank, on the 16th day of March, 1909. The first trial of this cause was before the court without a jury, and judgment was then entered for appellee, McPherson. From this judgment, Hahl & Co. appealed to this court. As Judge Reese, in an opinion reported in 133 S. W. 515, reversing the judgment of the trial court, has made a full and complete statement of the case as then presented by the pleadings and facts proven, we will therefore not restate the same further than as may be rendered necessary by an

amendment of appellee's petition filed subsequent to the former appeal.

The court in the opinion referred to did not hold the clause of the contract of February, 1909, the meaning and scope of which was in issue, to be unambiguous, but emphasizes the fact that there were no allegations in the petition that the terms in the agreement, "in the full exercise and enjoyment of the contract and its terms," bore other than ordinary significance, or that they were understood by the parties in any other sense, or that by mutual mistake the contract failed to express the meaning and intention of the parties, and that if there was anything in the circumstances under which the contract was executed to indicate that the parties understood said contract to bind Hahl & Co. to get such an instrument as would protect appellee against outstanding liens, it was not alleged in the petition, nor shown by the evidence, which showed only the existence and assertion, in a pending suit, of the vendor's lien and right to rescind and recover the land. It may be that the evidence on the last trial, and upon which appellee in his brief relies to support his interpretation of said contract of February 25, 1909, would put a different view upon the matter. The amended petition upon which the case was last tried contains the following allegations:

"That at the time this contract was executed neither plaintiff nor his attorneys knew with any accuracy the state of the title to these lands; they had never seen an abstract of the title, and the only information they had with reference thereto was from rumor and from statements made by defendants; that the defendant C. W. Hahl represented that on the day following the execution of the supplemental agreement, heretofore copied in this pleading, he was going to consummate a transaction that would enable him to place the lands in plaintiff's hands for sale free from any imperfection as to title, and that the title would be in good and satisfactory condition, and that the extension of the contract which he was to procure under this supplemental agreement would be sufficient to protect the plaintiff and his associates in the full exercise and enjoyment of the contract in all its terms. By this expression it was meant and understood that the defendants would procure an extension of the contract binding upon the owners of the superior title to the land whoever they might be, or would exhibit releases of any liens or incumbrances that might be menacing sale or foreclosure of the land and it was especially understood that the defendants were to procure the concurrence of certain clients of Messrs. Cocke & Cocke, attorneys of San Antonio who held certain liens against the land, the names of these clients not being divulged to the plaintiff or his attorneys at the time of these negotiations; and, since neither plaintiff nor his counsel was familiar with the details of the title or the nature and extent of the imperfection that existed in it. if any, or the nature and extent of the liens that might be against the land subjecting it to sale, these things were not enumerated or set out at length in the contract, but under the assertions of the defendants that all of the objections to the title would be obviated in such way that the sales could go forward without interruption, and that plaintiff and his associates could make sales and deliveries of the land free from objections on account of the title, it was written in the contract of the 23d of February, 1909, that this extension agreement to be procured would be sufficient to fully extend the original contract and protect the said McPherson and Prudential Land Company in the full exercise and enjoyment of the contract and its full terms, which meant, and was so understood by the parties thereto to mean, that defendants were then entering into various negotiations and arrangements, the full nature of which were not disclosed to plaintiff or his counsel and the names of the parties with whom had were not disclosed to the plaintiff or his counsel, but that under these arrangements then going forward and in process of early completion, the title to the lands would not only be left in good condition and be made acceptable to plaintiff and his counsel and any purchaser that plaintiff might have for the lands, but the title to the land would be in fact made good and merchantable."

As we construe both the opinion of Judge Reese, supra, and an opinion written by Judge Higgins of the Eighth supreme judicial district, reversing the judgment of the lower court on the second appeal of this case, reported in the 151 S. W. 323, neither of them held the clause, "in the full exercise and the enjoyment of the original contract and its terms," was unambiguous, but upon the contrary, we think both of them clearly intimate that, under proper allegations supported by proper and sufficient proof, it was a question of fact whether or not such clause would have required Hahl & Co. to obtain from the holders of the vendor's and other superior liens, agreements whereby appellee, McPherson, would have been fully protected in the exercise and enjoyment of the original contract and its terms, and under the paragraph of appellee's amended petition above quoted, we think it was admissible to show these facts; the language of said contract above quoted being ambiguous.

Upon the third and last trial, before a jury, from which this appeal is taken, the court gave the following instructions:

"The plaintiff in this case sued upon a written agreement dated the 23d day of February, 1909, by the terms of which the defendants bound themselves to procure the written extension of a former contract between the same parties. By the terms of this writing sued upon, it was agreed that the defendants would procure and deliver to the plaintiff an extension of the former contract in all things fully extending and ratifying the terms of said contract of September 10, 1908, for a period of 90 days from and after March 15, 1909, such extension to be binding upon said Hahl & Co., C. W. Hahl, and F. A. Connable and the owners of said land and to be sufficient to fully extend said contract and protect McPherson and the Prudential Land Company in the full exercise and enjoyment of said contract and its terms. The plaintiff contends that by this writing it was agreed and understood that the defendants were to procure the concurrence in this extension of the owners of the superior title to the lands referred to, that is to say, the concurrence of certain persons holding vendor's liens against this land; that it was necessary to the enjoyment of their contract that such concurrence be procured. The defendants deny that they undertook to procure the consent or concurrence in this extension of any persons other than C. W. Hahl, F. A. Connable, and W. J. Candlish which they tendered to

plaintiff, and deny that they undertook to procure the concurrence of the owners of the superior title. This is the single and only question in the case for your determination, and your verdict will be in the form of an answer to the following question: 'Did or did not the defendant C. W. Hahl agree with the plaintiff, acting through his attorneys, Messrs. Fenlon and Wharton, on the date above referred to, to procure the consent and concurrence of the owners of the superior title, that is, the outstanding vendor's lienholders in and to the extension agreement of February 23, 1909?' Your answer will be either that, 'The defendant, Hahl did agree and undertake to procure the consent of the owners of the superior title,' or that, 'The defendant Hahl did not agree and undertake to procure the consent of the owners and holders of the superior title,' as you may find the facts to be. In this connection you are instructed that the burden of proof is upon the plaintiff to establish the facts necessary to a recovery herein, by a preponderance of the evidence, and if he has failed to do so, you will answer the above special issue in the negative, you being the exclusive judges of the facts proven, of the credibility of the witnesses and of the weight to be attached to their testimony; but you must take the law from the court as herein given, and applying same to the facts so found by you, return your answer in accordance therewith."

The jury returned a verdict answering the question submitted:

"We, the jury, find that the defendant Hahl did agree and undertake to procure the consent of the owners of the superior title."

Upon this finding of the jury, judgment was rendered for the plaintiff for the $2,000 in escrow.

The material questions involved upon this appeal are:

First. Whether or not an issue is raised by the evidence as to what was understood and meant by the parties to the contract or agreement of February 23, 1909, by the clause above quoted, the meaning of which we hold is in dispute.

Second. Was the testimony of Thos. P. Fenlon and C. R. Wharton, appellee's attorneys who drew the agreement sued upon, and the testimony of Mr. Cocke of San Antonio, an attorney for one of the lienholders, and the affidavit of appellee, McPherson, admissible over the objection of appellants, and was such testimony relevant or material to any issue in the cause?

Third. Did the court err in instructing the jury that:

"The plaintiff contends that by the written agreement sued upon, it was agreed and understood that the defendants were to procure the concurrence, in the extension of the former contract, of the owners of the superior title to the lands referred to, that is to say, the concurrence of certain persons holding liens against said land; that it was necessary to the enjoyment of appellee's former contract that such concurrence be procured; that the defendants deny that they undertook to procure the consent or concurrence in said extension of any persons other than C. W. Hahl, F. A. Connable, and W. J. Candlish which they tendered to plaintiff, and deny that they undertook to procure the concurrence of the owners of the superior title. This is the single and only question in the case for your determination, and your verdict will be in the form of an answer to the following question: 'Did or did not the defend-

ant C. W. Hahl agree with the plaintiff, acting through his attorneys, Fenlon and Wharton, on the date above referred to, to procure the consent and concurrence of the owners of the superior title that is, the outstanding vendor's lienholders, in and to the extension agreement of February 23, 1909?'"

Answering these questions in the order here stated:

(1) We think the testimony of the witness named was sufficient to raise the issue of whether or not it was contemplated and understood by the parties that Hahl & Co. were required to obtain proper agreements or releases from the holders of the superior liens by the clause in the contract of February 23, 1909, that the extension contract to be secured by Hahl & Co. under the provision of said agreement of February 23d, should be sufficient to protect McPherson in the full exercise and enjoyment of the original contract and its terms.

[1, 2] (2) That the admission of such testimony was not error. This testimony tends to shed light upon the whole transaction between the parties, and thus enable the jury to arrive at the true purpose and intent of the parties in inserting the clause in dispute in the contract of February 23d. There may have been, and we think there were, parts of the affidavit of McPherson introduced in evidence which were immaterial and did not tend to prove any issue in the cause, but as some portions of said affidavit were admissible to explain the transaction in question, the general objection of appellants to the whole could not have been properly sustained by the trial court.

(3) The charge of the court complained of in appellants' seventh assignment of error was erroneous in that it instructed the jury that:

"The single and only question in the case for your determination and your verdict will be in the form of an answer to the following question: 'Did or did not the defendant C. W. Hahl agree with plaintiff, * * * on the date above referred to [February 23, 1909], to procure the consent and concurrence of the owners of the superior title, that is, the outstanding vendor's lienholders, in and to the extension agreement of February 23, 1909?'"

—without requiring the jury to find from the written agreement and the evidence as to what was intended and understood by the parties by the clause in the contract, "in the full exercise and enjoyment of said contract and its terms." We think the jury should have been instructed to find what, under all the evidence, inside and outside the written agreement, was the intention of the parties in inserting such clause in said contract.

In the case of Holman v. Oil Co., 152 S. W. 885, at page 891, Judge Reese, in rendering the opinion, says:

"We think that the evidence presents a mixed question of law and facts which should have been referred to the jury for its determination under appropriate instructions; the issue being what, under all the evidence, inside and outside the deed, was Holman's intention as to what'

land was conveyed?" (citing Kingston v. Pickins, 46 Tex. 99; Brown v. Chambers, 63 Tex. 131; Arambula v. Sullivan, 80 Tex. 618, 16 S. W. 436).

We think that appellants' eighth assignment of error, in so far as it insists that the verdict of the jury is not responsive to the sole issue in the cause, and therefore insufficient to support the judgment entered, should be sustained. The verdict of the jury:

"We, the jury, find that the defendant Hahl did agree and undertake to procure the consent of the owners of the superior title"

—is no answer to the question as to what the parties intended and understood by the use of the clause "in the full exercise and enjoyment of the contract and its terms," inserted in the contract of February 23, 1909. We think the jury should have been required to find from the language of said contract, and the evidence admitted with reference to what was said and agreed to by the parties at the very time said contract was made. From the answer of the jury, shown by their verdict, it might be inferred that they intended to find that at some time shortly before or shortly after said contract was executed Hahl did agree and undertake to procure the consent of the owners of the superior title to the extension contract called for by said contract of February 23, 1909. If said verdict may be so interpreted it is not sufficient to support the judgment entered. No part of an agreement made shortly after the contract was executed can be shown and be considered a part thereof.

For the errors mentioned, we think the judgment of the court below should be reversed and the cause remanded, and it is so ordered.

Reversed and remanded.

On Appellee's Motion for Rehearing.

[3, 4] In appellee's motion for rehearing counsel has spent much unnecessary labor in an effort to convince this court that it erred in reversing the judgment of the lower court, because of what it conceived to be an indefinite or erroneous charge. Perhaps we were unfortunate in the use of the language in the original opinion which led counsel to such conclusion. In the original opinion, this language is used:

"We think that appellant's eighth assignment of error, in so far as it insists that the verdict of the jury is not responsive to the sole issue in the cause, and therefore insufficient to support the judgment entered, should be sustained. The verdict of the jury, 'We, the jury, find that the defendant Hahl did agree and undertake to procure the consent of the owners of the superior title,' is no answer to the question as to what the parties intended and understood by the use of the clause, 'in the full exercise and enjoyment of the contract and its terms,' inserted in the contract of February 23, 1909. * * * From the answer of the jury, shown by their verdict, it might be inferred that they intended to find that at some time shortly before or shortly after said contract was executed Hahl did agree and undertake to procure the consent of the owners of the superior title to

the extension contract, called for by said contract of February 23, 1909. If said verdict may be so understood, it is not sufficient to support the judgment entered. No part of an agreement made shortly after the contract was executed can be shown and be considered as a part thereof."

Appellant's eighth assignment in effect insists that the verdict of the jury above set out did not answer the sole question at issue, and therefore not sufficient basis for the judgment rendered. While it is true that we did in the original opinion state that the charge of the court fully set out in the original opinion, submitting to the jury the only issue in the cause, was technically incorrect, we did not intend to present such technical objection as a cause for reversal, but referred to said charge only for the purpose of pointing out what we then conceived to be the insufficiency of or vice in the verdict of the jury. However, after a more careful examination of the charge referred to as a whole, we have reached the conclusion that, while it does not submit the sole question at issue clearly, yet in view of the rule which requires us to solve the doubt in favor of the judgment of the trial court, we conclude that it did so sufficiently, and that when the verdict of the jury complained of by appellants in their eighth assignment is considered under the rule above mentioned, in connection with the charge as a whole, it sufficiently answers the only question at issue, and was sufficient upon which to base the judgment rendered. We, therefore, conclude that we were in error in reversing the judgment of the lower court by our original opinion, and we now here sustain appellee's motion for rehearing, set aside our original judgment rendered herein on the 18th day of March, 1915, and order that the judgment of the trial court be, in all things, affirmed.

Affirmed.

On Appellants' Motion for Rehearing.

In appellants' motion for rehearing request is made that this court set out in full the statement of the case as made by Judge Reese in an opinion rendered upon a former appeal of this case reported in 133 S. W. 515, referred to and adopted in our original opinion in this case as a correct statement of the case. In view of the holding of the Supreme Court of this state in the case of St. Louis Southwestern Railway Co. of Texas v. Alexander, 172 S. W. 709, wherein it is held that the Supreme Court will not entertain a case where the Court of Civil Appeals in its opinion makes no statement of the case other than to refer to a statement made by a Court of Civil Appeals of the case upon a former appeal of such case, by reference to the style and number of the former opinion and the volume and page where it is to be found, we have granted appellants' said request and here set out the statement so made by Judge Reese, and adopt the same, to-

gether with the additional statement set out in the original opinion, as a correct statement of the case on this appeal, to wit:

"On September 10, 1908, C. W. Hahl & Co., a firm composed of C. W. Hahl and F. A. Connable, entered into a written contract with J. J. McPherson, by the terms of which McPherson was granted an option to purchase, on certain terms and for a limited time, all or portions of a large body of land in Bee county which Hahl & Co. had purchased of R. E. Nutt in 1905 and had afterwards, in 1908, sold to W. J. Candlish. After · this sale Candlish had, by written contract, appointed Hahl & Co. exclusive agents to sell the property. Under the terms of the contract between Hahl & Co. and McPherson, McPherson was to advertise the land at his own expense, and he did so, expending on this account $3,000. On February 23, 1909, a written contract was entered into between Hahl & Co. and McPherson, by the terms of which Hahl & Co. bound themselves to procure and deliver to McPherson by March 5th an extension of the contract of September 10, 1908; such extension 'to be binding upon Hahl & Co. and F. A. Connable and the owners of the land, and to be sufficient to fully extend said contract and protect the said McPherson in the full exercise and enjoyment of said contract and its terms.' Hahl & Co. deposited this agreement with the South Texas National Bank, and with it the sum of $2,000, which, as provided in said written agreement last aforesaid, represented a portion of the expenses incurred by McPherson in advertising the land under the original contract, and which was to be paid to McPherson upon the failure of Hahl & Co. to deliver, within the time stated, such extension. At or before the expiration of the time limited, Hahl & Co. delivered to McPherson an instrument of writing signed by themselves and W. J. Candlish which they claimed to be a compliance with their contract. McPherson did not so consider it, and, claiming that Hahl & Co. had failed to comply with their agreement in the contract of February 23, 1909, brought this suit against Hahl & Co. and the South Texas National Bank to recover the $2,000, with interest from March 5, 1909. To the action as against it the bank pleaded that it was a stakeholder merely, and ready to abide the judgment of the court in the premises. Hahl & Co. demurred generally, pleaded the general issue, and specially that it had complied with its contract of February 23d. * * *

"As the case is presented to us, we must confine ourselves to the evidence set out in the agreed statement of evidence referred to. The material facts so shown are, in substance, as follows: The land referred to is part of the R. E. Nutt ranch in Bee county, which was sold and conveyed by Nutt to Hahl & Co. in 1905, and in 1908 conveyed by Hahl & Co. to W. J. Candlish, who, by writing executed by him, appointed Hahl & Co. his exclusive agents to sell the same. On September 10, 1908, Hahl & Co. entered into a written contract with McPherson, acting for himself and others, with regard to a part of this land. This agreement is very long, and contains many complicated provisions; but the substance of it is that Hahl & Co. give to McPherson and his association an option to buy the land, or parts thereof, upon certain conditions and for a certain price. McPherson was to have four months from date of the contract to purchase and make payment of a certain 640 acres. If they did so they were to have two months longer to purchase an additional 1,000 acres. If they did this, they were to have an additional two months in which to purchase a second 1,000 acres, and so on until they had purchased the whole of the land. McPherson was to advertise the land, which he did, at his own expense, expending therefor $3,000. Upon compliance with the terms of the contract Hahl & Co. were to execute or have executed general warranty deeds. We only state the parts of this long and intricate contract necessary to an understanding of the questions presented on this appeal. On February 23, 1909, there being a dispute as to whether said option had expired, Hahl & Co. and McPherson entered into a written contract, by the terms of which Hahl & Co. agreed to procure and to deliver to McPherson in 10 days (or March 5th) a written extension of the contract referred to above, for 90 days, in all respects extending and ratifying said contract, 'said extension to be binding upon said Hahl & Co. and C. W. Hahl and F. A. Connable and the owners of said land, and to be sufficient to fully extend said contract and protect the said McPherson in the full exercise and enjoyment of said contract and its terms.' It was agreed, as set out in said contract, that Hahl & Co. should deposit in the South Texas National Bank $2,000 representing a part of the expense incurred by McPherson in advertising the land, as provided in the original contract; this amount to be paid to McPherson's attorney for him if Hahl & Co. failed to deliver the extension contract referred to by March 5th. Within the time limited Hahl & Co. procured and offered to McPherson as a compliance with their contract an instrument in writing extending the. original contract for 90 days from March 5, 1909, signed by Hahl & Co. and W. J. Candlish. This instrument McPherson refused to accept as a compliance with the contract.

"At the time this agreement to procure the extension contract was entered into, and at the date of the original contract, Hahl & Co. were not the owners of the land; but, having bought it from Nutt, they had sold it to Candlish. The land was heavily incumbered with vendor's and judgment liens for large amounts, as hereafter shown. The original purchase-money notes given by Hahl & Co. to Nutt amounted to about $40,000, secured by the express vendor's lien in the land, were outstanding in the hands of one McCampbell, who had instituted suit thereon and to enforce the vendor's lien, and on February 15th by amended petition had set up the superior title, and sought to recover the land. Afterwards, on July 1, 1909, judgment was rendered in this case (as stated in the court's findings) foreclosing the liens and for title and possession, including all the lands embraced in the contract with McPherson. In addition to this, there were several judgment liens for large amounts against Hahl and Connable; but all of these judgments were fully released as to this land on February 23, 1909, except one for $17,500 in favor of E. M. Paulson, which the court's findings state has been fully released, without saying when. The findings of fact of the trial court, in addition to the above, embrace many other facts evidently based upon the excluded evidence, and which, as they find no support in the evidence which we can consider, are not adopted by us. The issue presented is whether the instrument extending the original contract, signed only by Hahl & Co. and W. J. Candlish, is a compliance with the agreement of February 23d, and this depends upon whether it is binding upon C. W. Hahl and F. A. Connable, and Hahl & Co., and upon the owners of the land, and sufficient to protect McPherson in the full exercise and enjoyment of the original contract and its terms."

All other assignments in appellants' motion for rehearing are overruled, and, with the additions here made, the original opinion, as reformed by us upon hearing of appellee's motion for rehearing, is adhered to.