SARAH J. WILSON ET AL. V. COLEMAN SMITH ET AL.

1. SHERIFF'S DEED.—A levy and sale and sheriff's deed for "one hundred and sixty acres of land, being a part of the homestead tract of James Bankston, excluding two hundred acres exempt by law," is not void for uncertainty.  The court will not presume from the face of the deed that the land cannot be identified by the aid of extrinsic circumstances.

2. SAME—IRREGULARITY—WAIVER.—The evidence showing that all
of a survey of twelve hundred acres had been sold but three hun-
dred and fifty or three hundred and sixty acres, on which defendant
in execution had his homestead; that defendant in execution point-
ed out the excess of the tract to be sold under execution,—was pres-
ent at and assented to its sale, the purchaser entering upon the
tract bought and remaining until the death of the defendant in exe-
cution; in a suit by the heirs of defendant in execution: *Held*—

  1. The land was sufficiently identified to pass by the sheriff's
sale.

  2. The acts of defendant in execution evidenced a waiver of
any irregularity.

  3. It was error to render judgment against such purchaser for
the land.

APPEAL from Red River. Tried below before the Hon.
Joseph Bledsoe.

Coleman Smith and others, heirs of James Bankston,
brought an action of trespass to try title against Sarah J.
Wilson and others for a tract of land described, substan-
tially, as the unsold balance of a tract of twelve hundred
acres, and reserving also a homestead of two hundred acres.

The defendants pleaded not guilty, and on the trial defend-
ants showed in evidence two judgments against James Bank-
ston, executions thereon, and levy and sale.

The description of the land given in the levy and in the
sheriff's deed was vague. The description is given in the
opinion. The defendant in execution was present at the exe-
cution sale, assented to it, having pointed out the land to the
sheriff, and possession was taken under the sale and was kept
up to the suit. Bankston was insolvent at the time of sale.

Judgment was rendered for the plaintiffs, and defendants
appealed. The questions discussed raise the sufficiency of
the description in the levy and sheriff's deed, the effect of
the waiver by the defendant in execution, &c.

*Sims & Wootten,* for appellants.

I. The judgment of the court is contrary to the law and
the evidence, and is not supported by either. The land is

not sufficiently described in the petition to justify the rendition of a judgment for its recovery. [The description is given in the opinion.]

II. If the land is sufficiently described to render it certain what land is sued for, then it has been so rendered certain in this proceeding, and the appellants were entitled to a judgment for the same upon their legal and equitable title disclosed in the progress of the trial, and to the same land. (Rorer on Judicial Sales, arts. 896–898; Hackworth v. Zollars, 30 Iowa, 435–438; Glenn v. Malone, 4 Iowa, 314–320; Dygert v. Pletts, 25 Wend., 402.)

As to the equity power of the court in actions of this sort, see Viser v. Rice, 33 Tex., 154; Miller v. Alexander, 8 Tex., 43; Kinney v. Vinson, 32 Tex., 127; Herrington v. Williams, 31 Tex., 464; Neill v. Keese, 5 Tex., 23; Easterling v. Blythe, 7 Tex., 210; Peevy v. Hurt, 32 Tex., 153.

III. The land is described in substantially the same way in appellees' pleadings and in the sheriff's deed to appellants. (Howard v. North, 5 Tex., 312.)

IV. The defendants proved a regular legal and equitable title to the land in controversy. (Leland v. Wilson, 34 Tex., 91, 92.)

V. The judgment debtor pointed out the land to be levied on, and was present and assented to the sale, and at the time was insolvent. This was shown by the testimony of W. B. Wright. (Alexander v. Miller, 18 Tex., 897, 898; Mackey v. Wallace, 26 Tex., 529; Willis v. Matthews, 46 Tex., 481–484.)

GOULD, ASSOCIATE JUSTICE.—Appellees, the heirs of James Bankston, brought this action of trespass to try title, and in their original petition they describe the land sued for by giving the field-notes of a survey "containing twelve hundred acres," and then proceeding thus: "Reserving all land sold from this survey by James Bankston previous to the 21st of September, 1866, and also reserving from said survey two

hundred acres as a homestead, leaving a remainder of one hundred and sixty acres, more or less." The defendants claimed as purchasers at a sheriff's sale in September, 1869, under a judgment of the District Court of the county where the land is situated, of date September 21, 1866, also under a judgment of the County Court of date June 2, 1866, the sheriff's deed describing the land sold substantially as in plaintiffs' petition, only that the field-notes of the survey given are said to contain twelve hundred and eighty acres. The judgments, the executions, the sale thereunder, and the sheriff's deed all appear to be regular, unless the levy and deed are invalid because of insufficient description of the land sold. The levy was on "one hundred and sixty acres of land, being a part of the homestead tract of said James Bankston, exclusive of two hundred acres exempt by law."

On the trial, it appeared that James Bankston, previous to the judgments under which the sale was had, had sold off all of the original survey of " about twelve hundred acres," except a homestead tract of three hundred and fifty or three hundred and sixty acres. After his death the homestead was run off. The defendants occupied the remainder, of one hundred and fifty or one hundred and sixty acres. It was in evidence that James Bankston pointed out the excess of his homestead tract over two hundred acres for levy, and, further, that he was present at and assented to the sale, and it appears that the purchaser took and held possession. This was substantially the evidence. The plaintiffs' pleadings were amended so as to allege "that the land claimed by the defendant, and of which the defendant has possession, is about one hundred and fifty acres off of the south end of the tract described in plaintiffs' petition, commencing at the southwest corner of Coleman Smith's subdivision of said tract and running due east to Kickapoo creek, and including all of the land of said tract lying south of said line." A jury was waived, and the court rendered judgment for plaintiffs for one hundred and fifty acres off of the south end of the James Bankston head-

right of twelve hundred acres, " beginning at the southwest corner of Coleman Smith's subdivision," &c., following the description in the amended petition.

This description is very indefinite. An inspection of the field-notes of the original twelve hundred or twelve hundred and eighty acres survey shows that it lies on both sides of Kickapoo creek. The line described as running from a given point due east to Kickapoo creek would not be a line reaching entirely across the survey, and unless we infer that Kickapoo creek was intended to be the eastern boundary, excluding all of the survey lying east of that creek, it would be impossible to ascertain what land was recovered. We may surmise that the land in controversy was all west of Kickapoo, but the description in the judgment ought not to require such surmises to sustain it. As it is possible, however, that this line may strike the creek exactly where it enters or leaves the survey, or that the creek may run due south from the point where the line intersects it, we do not propose to base a reversal of the judgment on this defect.

The case has not been briefed by appellee, and, as in many other cases where the court is substituted for the jury, and only one side appears in this court by counsel, we are left to infer the grounds upon which the court proceeded, and may possibly fail to notice some question which was yet prominent and controlling in the mind of the presiding judge. Unless the judge gives his reasons for the judgment, even counsel present at the trial may be mistaken as to his views. It would be much more satisfactory to have the record show the questions passed upon by the court. Apparently, the court held the defendant's title insufficient, because of uncertainty of description of the land sold in the sheriff's deed and in the levy. If so, we are of the opinion that the court erred. Certainly the deed cannot be pronounced void upon mere inspection; for it cannot be said that it appears from the face of the deed that the land conveyed cannot be identified by the aid of extrinsic evidence. (Camley *v.* Stanfield, 10.

24

Tex., 550; Kingston v. Pickins, 46 Tex., 99; Ragsdale v. Robinson, 48 Tex., 379.)

Indeed, it appears from the evidence that it was known what part of the original survey James Bankston had sold previous to September 21, 1866, and that therefore the only indefiniteness in the deed or the levy grew out of the undesignated boundaries of his homestead. The homestead tract, embracing three hundred and fifty or three hundred and sixty acres, appears to have been fixed and known. The levy was on the excess of this tract, over two hundred acres, recognizing the exemption of two hundred acres, to be laid off according to Bankston's choice, including his improvements. It was not a sale of so many acres out of a larger tract, with no means of fixing or locating the land sold, then or afterwards; but was a sale of that part of the tract remaining after the homestead was laid off. But however it might be in case of such a levy and sale if objected to in time by the defendant in execution, in this case it was averred and proven that the levy was made on the land as pointed out by James Bankston himself, and that he was present at and assented to the sale. The purchaser, moreover, appears to have gone into peaceable possession, and remained until after Bankston's death. These facts are sufficient to show a waiver by Bankston of any irregularities in the levy or sale. (Miller v. Alexander, 13 Tex., 506; Id., 18 Tex., 895; Freeman on Executions, sec. 307; see, also, Rorer on Judicial Sales, secs. 896, 897.) Under these circumstances, we think that the levy and sale were valid, and that the land was so identified by the description in the levy and deed, in connection with the extraneous evidence, as to make it error to hold defendant's title insufficient on that ground. As the case is presented to us, our opinion is that the court erred in giving judgment for the plaintiffs. Accordingly, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.