MACKECHNEY et al. v. TEMPLE LUMBER CO. et al.   (No. 214.)

(Court of Civil Appeals of Texas. Beaumont. July 6, 1917. Rehearing Denied Oct. 17, 1917.)

1. DEEDS ⬥114(1) — VOLUNTARY CONVEYANCES—CONSTRUCTION AS TO DESCRIPTION.

A description in a voluntary conveyance is covered by the same rules of construction which apply to an involuntary conveyance.

2. ADVERSE POSSESSION ⬥80(2)—TAX DEED —SUFFICIENCY OF DESCRIPTION.

A description in a tax deed as "four thousand acres * * * the grant originally made for A. W. C. on the Sabine river in Sabine county, Texas," is a sufficient description under Vernon's Sayles' Ann. Civ. St. 1914, art. 5676, relating to descriptions and limitations, to hold constructive possession of the land included within the boundaries of said description, the reference to a prior grant, in effect, writing the field notes therein contained into the deed, and it matters not that the tract in fact contained 5,500 acres.

3. EVIDENCE ⬥293—HEIRSHIP OR PEDIGREE —DECLARATIONS OF DECEASED MEMBERS OF FAMILY.

A second cousin to the husband of a granddaughter of a person whose heirship is to be proved is not a member of the family whose

declarations as to heirship or pedigree are admissible; declarations of general reputation among persons other than members of the family as to heirship or pedigree connected with that family being inadmissible.

Appeal from District Court, Sabine County; A. E. Davis, Judge.

Trespass to try title by Mrs. M. E. Mackechney and others against the Temple Lumber Company and others. Judgment for defendants, and plaintiffs appeal. Reversed, and judgment rendered.

Oliver J. Todd, of Beaumont, for appellants. Minor & Minor, of Beaumont, for appellees.

BROOKE, J. This was an action in trespass to try title brought by the plaintiffs for the recovery of the A. W. Canfield headright survey in Sabine county. The plaintiffs pleaded the statutory allegations, and specially pleaded title in themselves under 3, 5, and 10 years' statutes of limitation, and specially claiming under the 10-year statute under memorandum of title describing the survey, and duly recorded in Sabine county.

Defendants Lutcher-Moore Lumber Company, a corporation, Mrs. Francis J. Lutcher, individually and as executrix of the estate of H. J. Lutcher, deceased, E. W. Brown, and W. H. Stark demurred generally, filing a general denial, pleaded not guilty, and specially denied the facts alleged in each of the paragraphs of plaintiffs' petition, and also pleaded by way of cross-action against M. A. Watson for the sum of $19,602 and interest alleged to have been incurred upon his warrant. Defendant Temple Lumber Company demurred generally, filing general denial, pleaded not guilty, denied specially the allegations of the several paragraphs of the petition, and pleaded by way of cross-action against George C. Greer, F. D. Minor, and W. E. Miller for $6,250 alleged to have been incurred by them by reason of their warranty. George C. Greer, F. D. Minor, and W. E. Miller filed an answer, adopting the allegation of Temple Lumber Company.

The cause was submitted to the jury on special issues, and the jury found that the plaintiffs had held possession of the land described in plaintiffs' petition, cultivating, using, and enjoying the same for more than 10 consecutive years before the institution of the suit, and that said possession had been held from 1873 to 1904. The trial court rendered judgment upon the verdict of the jury for plaintiffs for 160 acres to include the improvements so shown and found to have been occupied, and for defendants for the balance of the survey, to which judgment the plaintiffs excepted, on the ground that they were entitled to recover all the property under memorandum of title duly recorded, and by reason of their prior possession of the survey, and ought not be limited to 160 acres,

from which judgment they have regularly appealed to this court.

The charge of the court was as follows:

"Gentlemen of the jury, this is an action in trespass to try title brought by Mrs. M. E. Mackechney et al. v. Temple Lumber Company et al. to recover the title and possession of the A. W. Canfield survey in Sabine county.

"The only question of facts submitted for your consideration are relative to adverse possession or limitation upon said property. In order to determine these questions, it will be necessary for the court to instruct you in the proper definition of some of the terms contained in the following questions:

"You are instructed that 'peaceable possession' as hereinafter submitted be such as is continuous and not interrupted by adverse suits to recover the estate.

"You are instructed that 'adverse possession' as is hereinafter used is defined to be an actual and visible appropriation of the lands commenced and continued under the claim of right, inconsistent with and hostile to the claim of another.

"You are instructed that under the law peaceable and adverse possession need not be continued in the same person, but when held by different persons successively, there must be a privity of estate between them.

"Privity of estate means that the succeeding persons shall hold in the same right and through or under the preceding person.

"Bearing in mind the foregoing definitions, you will make your answer to the following interrogatories:

"First. You are asked whether or not plaintiffs have shown by a preponderance of the evidence that Gilbert Mackechney, John Mackechney, Mrs. M. E. Mackechney, and her heirs, or any or all of them, held peaceable and adverse possession of the land in controversy with tenants, agents, or representatives upon the ground, cultivating, using, or enjoying said property for 10 consecutive years prior to the institution of this suit; you will answer this question in 'Yes' or 'No' as you find the facts to be.

"Second. If you answer the first question in the affirmative, then you will say by your verdict during what years such possession was held.

"You are instructed that the burden of proof is on the plaintiffs to make out their case by a preponderance of the testimony.

"You are the sole and exclusive judges of the credibility of the witnesses, and of the weight to be given to their testimony, but the law of the case you will take from this charge, and be governed thereby."

The jury returned the following answers to the questions submitted to them by the court:

"We the jury answer interrogatory 1, 'Yes' and interrogatory 2, 'Such possession was held beginning in 1873 and up to 1904.'"

Plaintiffs introduced in evidence record of the original grant from the Mexican government to A. W. Canfield, conveying to him the land in controversy in this suit. They also introduced in evidence a tax deed from William Mason, assessor and collector of taxes, to Gilbert Mackechney, which is shown on page 100 of the statement of facts to be as follows:

"State of Texas, County of Sabine. Whereas by assessment made in conformity with law there was due and owing to the state of Texas and county of Sabine from Aurelia Russell the sum of twelve dollars assessed as taxes for the year A. D. 1848 and 1849, upon the taxable property of the said Aurelia Russell and where-

as the said Aurelia Russell has failed and refused to pay the same as required by law: Be it known that I, William Mason, collector and assessor of taxes for Sabine county did on the 10th day of November, A. D. 1849, by virtue of my tax list levy upon the following described land and property of the said Aurelia Russell, to wit: Four thousand acres of land lying and being in Sabine county, on the Sabine river and known as the grant originally made to A. W. Canfield and having given notice of the time and place of selling said land and property in the time and in the manner required by law, did at the courthouse door in Sabine county on the 13th day of December A. D. 1849, offer the same for public sale at public auction as the law directs and there being no person present who would bid said sum for any less quantity of land and property than the whole same was knocked off to Gilbert Mackechney, he being the only bidder therefor, for the sum of twelve dollars, it being the amount of taxes due thereon and two dollars and fifty cents costs, making in all the sum of fourteen dollars and fifty cents, and the said Gilbert Mackechney having paid said sum to me. In consideration thereof have this day entered satisfaction of said indebtedness on my tax lists, do hereby grant, alienate and convey unto the said Gilbert Mackechney, his heirs and assigns forever, all the right title and interest that the said Aurelia Russell or any person unknown claiming the same had in and to the said land and property at the time of the levy and sale aforesaid. To have and to hold the said land and property to him the said Gilbert Mackechney his heirs and assigns forever free from the claim or claims of all persons whatsoever.

"Given under my hand and seal this 13th day of December A. D. 1849. Wm. Mason, Assessor and Collector of Taxes for Sabine County, State of Texas. In presence of R. K. Goodhoe, William B. Frazier."

This deed was objected to as a muniment of title for numerous reasons, and was offered and received in evidence only as a deed under the 5-year statute, and only as a memorandum under the 10-year statute of limitation.

The testimony of various witnesses, for the purpose of proving their long claim and adverse possession of the property, as well as the recognition of the claim in the community, was heard, and was conclusive of the fact, as found by the jury, with reference to limitation and the time thereof.

It was agreed by all parties that the actual acreage within the field notes of the A. W. Canfield survey is more than 5,500 acres.

It was shown by the plaintiff by the testimony of W. F. Goodrich that there is but one A. W. Canfield survey in Sabine county, and this is an original grant, and is on the Sabine river; that this grant contained about 5,500 acres.

The defendants offered in evidence a deed from A. W. Canfield to William Clark, acknowledged October 13, 1836. They also offered a deed from A. I. Simpson and others to M. A. Watson, conveying the A. W. Canfield league for $1,000 consideration, which deed was acknowledged on July 4, 1899, and recorded in volume L, p. 295, Deed Records of Sabine County; deed from A. I. Simpson et al. to M. A. Watson, which seems to have been reacknowledged; acknowledged by

some that did not acknowledge before, recorded in volume L, p. 444, Deed Records of Sabine County, filed July 31, 1899, and acknowledged on 24th day of June, 1899.

A deed was offered from Nora Smith et al. to M. A. Watson, consideration being $66.65, conveying their interest in the Canfield league, dated July 24, 1899, filed for record August 9, 1899, recorded in volume L, p. 300.

Deed was offered from Maggie McClure et al. to M. A. Watson, conveying the interest of grantors in the Canfield league, dated August 2, 1899, filed and recorded August 11, 1899.

Deed was offered from C. A. Russell et al. to M. A. Watson, consideration $100, conveying their interest in the Canfield league, dated September 20, 1899, filed for record September 26, 1899.

Deed from C. W. Canfield, consideration $50, to M. A. Watson, conveying "all that certain league or survey of land located in the county of Sabine and state of Texas by a survey granted to A. W. Canfield, patent No. 1321, volume 23, on the 13th day of October, 1835, and bounded by other surveys." It conveys the whole league, dated September 21, 1899, recorded November 3, 1899.

Power of attorney from A. H. Canfield to I. D. Polk dated November 23, 1889, recorded November 29, 1889, authorizing him to sue for, recover, and sell and dispose of 4,428 acres, the A. W. Canfield league, situated in Sabine county, Tex.

Power of attorney from C. W. Canfield to I. D. Polk, authorizing him to secure the interest of Canfield in the A. W. Canfield league of 4,428 acres, dated November 30, 1889, recorded January 3, 1890.

Deed from I. D. Polk, consideration $1, to M. A. Watson, conveying all the interest of Polk in the Canfield league. It does not seem to be dated, but is acknowledged October 28, 1899.

Defendants connected with such title as was passed into M. A. Watson and I. D. Polk, but introduced no evidence to show heirship to A. W. Canfield, and the only testimony attempting to connect with Wm. Clark was the testimony of Rufus Price and W. F. Goodrich. The extent of the evidence of Rufus Price was that he had known a Col. William Clark, who was with him in the war, and who was a son of another William Clark, who at one time lived in Sabine county, but he did not know that any of the people under whom defendants claim were connected with the said Clark. The only other evidence offered was that of W. F. Goodrich, shown to be as follows:

"Q. Mr. Goodrich, are you acquainted with, or did you ever know of the relatives of Old William Clark, Deaf William Clark, I believe they called him? A. Well, I have known people they said were his relatives. Q. That claimed were his relatives? A. Yes, sir.

"Plaintiffs: Now, we object to that question and the answer thereto, unless it appears who said they were his relatives, and unless it affirmatively appears that the persons saying they

were his relatives are deceased members of his family.

"Court: This witness ought to confine it either to declarations of the members of the family or reputation from older citizens.

"Defendants: I will confine him to that.

"Plaintiffs: We object to it in so far as it includes any reputation of any older citizen who is not a member of the family.

"Court: Very good.

"I am connected remotely through some of my people with that family. I can state how that is. My grandmother and Dr. John Smith were second cousins, and Dr. John Smith, I understood from her and from old citizens here in the country years ago, married a daughter of W. H. Harris, who was the first clerk of this country after it was organized, and that W. H. Harris married a daughter of Deaf Bill Clark.

"Plaintiffs: That wouldn't make your grandmother any relation to Clark?

"Witness: Only by affinity. She was a kinsman of Dr. Smith, who married a daughter of William H. Harris and granddaughter of William Clark. I never did know Deaf Bill Clark, William Clark. He died a good many years ago; I expect before I was big enough to remember. I didn't know his son that was in the army. Q. It was his daughter that W. H. Harris, the first clerk, is reputed generally and known to have married? A. Yes, sir.

"Plaintiffs: We except to this testimony, all of it.

"Court: This is information that you have been offering by general reputation and from old citizens who are now dead? A. Well, most of it I had from my grandmother, and she is dead, and she was an old citizen of this county and well acquainted with all the families that lived here. Q. I will ask you Mr. Goodrich, Emma J. Simpson, June C. Harris, W. H. Harris, J. B. Harris, Jennie Harris, Lula Harris, Amelia Clark, L. E. Griffith, Nora Smith, Albert Smith, and Ellerton Smith, from your information gained by hearsay from the old citizens and members of the family who are dead, what relationship, if any, did these parties named bear to old Deaf William Clark?

"Plaintiffs: We make the additional objection we made to the other testimony that this is leading, in addition to being incompetent, calling for testimony from illegal sources; that is, other than members of the family.

"Court: Objection overruled.

"Plaintiffs: We except.

"Witness states: Well, I remember Dr. John Smith was on a visit here to this country one time after he had moved to Navarro county, and he stayed with my father's family while he was here. He and my mother being related, he was telling her the names of his children, and one of the children that I remember him mentioning as his child was Nora Smith. I don't remember the names of the others, but then that particular one, I do remember, and the circumstance that caused me to remember it is that my mother's youngest child was named Nora, and they were discussing that matter among themselves in a way, and as I stated before, from general reputation from what old people said, especially what my grandmother said, I understood that Dr. John Smith married Wm. H. Harris' daughter, and that she was a granddaughter of Deaf Bill Clark, as they called him. As to the others, I have heard in a general way that the Harrises, J. B. Harris, or June B. Harris, was an old bachelor and lived in Nacogdoches, and I understood he was a grandson of William Clark, Deaf Bill Clark.

"Court: As to that general way, I think the objection is good, unless it is by general reputation.

"Witness: What I mean, general reputation in the country, is what I mean by that, general way and general reputation.

"Court: Very well.

"Plaintiffs: We except.

"Witness states: From what she said to me about the older people that lived here that day and time; and at the time that Dr. Smith was visiting at our home, June B. Harris was with him, and I heard discussions between them and my father about the lands that were owned by the estate of William Clark, and they were here at that time, as I understood from what I heard them say, looking up the interests they had in the estate of William Clark, the lands in this county. As to June C. Harris and W. H. Harris and the Griffiths, I have directly from June C. Harris the history of the Clark family, and he is living; and he has told me—

"Plaintiffs: I object to anything a living witness told him.

"Court: Of course, his statement wouldn't be admissible.

"Witness states: From this general reputation, from old persons, the ones you have named, in the descendants of the W. H. Harris I am talking about, the first Clark. Those are all the persons that I ever heard mentioned as being relatives or descendants of the old Clark, of William Clark."

Cross-examination:

"I do not know from this general reputation or from family history how many children old Deaf Bill Clark had. I can only say that I have heard of some mentioned as his children. I don't know whether that was all of his children or not. I have never heard of more than two children of Deaf Bill Clark mentioned—his son, William Clark, and his daughter, Mrs. Harris. I think that is all. I don't remember just exactly; I have heard that Griffith is related to him some way or other, that is, married into the family, something or other. I don't know whether he married a daughter or granddaughter of Deaf Bill Clark. I have heard that talked, but I don't remember what was said about it. I have never heard of but two—Col. William Clark and a daughter, Mrs. Harris. Those are the only two I think of that have been spoken of. I don't know what children Col. Clark had. As to whether or not I know the names of any of children, will say I know what Mr. June C. Harris has told me; I don't know that by general reputation. I know something about the names of the children this daughter, Mrs. Harris, had. She had a son named J. B. or June B. Harris. That was the old bachelor, and she had a son. I think his initials were W. H., too. The way they distinguished him from his father, I think they called him William Henry and the other William H. She had those two sons that I have heard of, and then she had the daughter that married Dr. John Smith. Dr. John Smith is dead; that is, I have heard that he was dead. I have not heard it from his immediate family, but I have heard that he was dead. I have heard it from relatives of his family that he was dead. Q. Are those relatives that told you that, are they living or dead? A. They are living, but I have understood from my own family—that is, from my grandmother—that he was dead.

"Court: If you urge the objection you made a moment ago—this witness is making these statements as to the statements of living witnesses—if you continue to urge that, these statements wouldn't be admissible.

"Defendants: I don't object to it, if he wants to bring it out.

"Plaintiffs: I object to the testimony of any living witness, and I am trying to show on cross-examination that some of this testimony given on direct examination, objected to, was from living witnesses.

"Plaintiffs: We ask to have stricken out anything coming from any living witness.

"Defendants: He has asked him about the

death of John Smith, and he says a living party told him that.

"Court: He made the statement to you and Mr. Todd objected to it, and I overruled the objection, and I judge that Mr. Todd is now endeavoring to show that those statements were based on statements made by living witnesses. If that is it, as to any statement made by living witnesses, I sustain the objection, I sustain the objection to any testimony that Mr. Goodrich might detail before the jury as to what any living witness told him.

"Witness states: I can only tell you from hearsay where Deaf Bill Clark lived. I didn't know the gentleman. I know from general reputation in the country where he lived and statements made to me by old people. I can tell you that. His first residence that I have any recollection of hearing any statements made about it was on the road from Milam to San Augustine, about one mile west of Milam, up on a high hill, in Sabine county. As to whether or not he got a headright in this county will say there is two William Clarks in this county. I don't think he did have a headright in this county. There are two William Clark headrights in this county—William Clark and William F. Clark. I think there is three William Clarks in this county. It is a very common name. I have heard of three different Clarks that I recall, one called William F. Clark, one called William Clark, and Old Deaf Bill Clark was one, and one they called—I think they had a nickname for him—some kind of a nickname. I don't know that Deaf Bill Clark ever got a headright in this county; I don't think he did. I don't know whether he ever got a headright at all or not; I couldn't say positively about that. Q. When did he live up there by Milam—Did he fight in the Texas Independence? A. Yes, he was here. I think he was a representative to the constitutional convention they had out here from this district.

"Witness states: I mean the Constitution of the Republic; he was a very prominent man here. He used to be commissioner. He was president of the board of land commissioners, a very prominent man in this section of the county at that time. I mean, the board formed by the Republic for the detection of fraudulent certificates."

J. G. Barker testified as to location of the land as shown by plat.

W. B. Powell testified as to the heirship of Mrs. A. R. Wilson, but testified as to no connection of Mrs. Wilson as to any one connected with this title.

T. L. McDaniel testified for defendants that he is 68 years old, and that he lives six miles north of the Canfield grant, and knew M. Y. Garlington and knew that he lived on this land; that he does not know of ever having heard Garlington say how he claimed the land he lived on, and never heard of Mackechney's claim until after Garlington's death; that the first he heard of Mackechney's claim was when Mackechney was selling the land to various settlers; that if Garlington and Mackechney had made a deal in 1859 that he would not likely know anything about it, and that he don't know anything that took place between these parties; that he does not know whether Mackechney came down to see Garlington or not; that Mr. Sims, who testified in the case, was a member of the Garlington family, and knew more about their business than the witness.

The jury, as before stated, found by their verdict that plaintiffs have held peaceable and adverse possession of all the land in controversy, as described in plaintiffs' petition, from 1873 to 1904, thereby only considering the tenancy of L. L. Hill and Bob Sibley, and excluding the tenancy of Garlington.

The court filed the following supplemental findings:

"The court, on motion of the attorneys for the plaintiffs in the above entitled and numbered cause, now makes and files as supplementary to the verdict of the jury the following findings of fact and conclusions of law:

"Findings of Fact.

"I. The verdict of the jury is, and the court so finds as a fact, that the actual possession of the plaintiff and those under whom they claim began in the year 1873, and ended in 1904, the undisputed proof is that at no time did the plaintiffs have actual possession of any land in the A. W. Canfield league, except two tracts, one tract known as the L. L. Hill 400-acre tract and the other the M. Y. Garlington bottom tract, the improvements on which embrace 50 or 60 acres of land on each tract, a portion of which improvements was on the Hill 400-acre tract, and a portion of which was on the M. Y. Garlington bottom tract.

"The 400-acre tract was conveyed by John Mackechney to L. L. Hill by deed dated July 29, 1882, John Mackechney being the predecessor in the claim of the plaintiffs. This sale was a complete abandonment of the actual possession and improvements on the L. L. Hill 400-acre tract.

"The only other part of the A. W. Canfield league of which there was actual possession, use, and cultivation by those under whom the plaintiffs claim was what is called the M. Y. Garlington bottom tract, with an improved acreage of about 50 or 60 acres, and this actual possession of the Garlington tract terminated in the year 1904.

"The plaintiffs and those under whom they claim have not had, since the deed in 1882 to L. L. Hill to the 400-acre tract, an actual possession of any of the A. W. Canfield league, except about 50 or 60 acres in cultivation on what is known as the M. Y. Garlington bottom tract.

"II. I find that the defendants in this case have shown by competent evidence title to an undivided interest in the land in controversy by the introduction of the grant to A. W. Canfield and the deed from A. W. Canfield for the league to William Clark and by proof that certain persons were at least some of the heirs of William Clark, by deeds from those heirs to M. A. Watson, and by deeds from M. A. Watson to the defendants.

"III. The deed from the assessor and collector of taxes for Sabine county to Gilbert Mackechney under whom plaintiffs claim dated December 13, 1849, was for the taxes for 1848 and 1849. This deed was admitted in evidence by the court over the objections of the defendants, not as a title-passing paper, for there was no proof offered showing the regularity of the assessment, levy, sale, etc.; when admitted, it was the court's duty to construe its effect. The deed recites taxes owing to the state and county by Aurelia Russell for 1848 and 1849 from taxable property of Aurelia Russell, 'by assessment made in conformity with law' and a levy by the assessor and collector 'by virtue of my tax list from the following described land and property of the said Aurelia Russell, to wit: Four thousand acres of land lying and being in Sabine county, Texas, on the Sabine river, and known as the grant originally made to A. W. Canfield.'

"I find that the acreage in the A. W. Canfield survey is in excess of 55 acres.

"IV. I find that the plaintiffs have made the required proof under the statute of limitation of ten years to entitle them to recover the entire Canfield league, if the tax deed to Gilbert Mackechney fixed the boundaries of their claim as to the entire league so that their possession might be construed to be coextensive with the boundaries specified in such instrument."

"V. I find that plaintiffs and those under whom they claim completely abandoned their possession of all lands on the A. W. Canfield league in the year 1904, since which time they have had no actual possession of any portion of the A. W. Canfield league.

"VI. I further find that plaintiffs, though they abandoned their possession of all lands on the A. W. Canfield in the year 1904, did not abandon their claim to the land, and have continued, since 1904, to claim the A. W. Canfield league of land.

"Conclusions of Law.

"I. I conclude as a matter of law that the plaintiffs are not entitled to recover any portion of the A. W. Canfield league of land by reason of the 3-year statute of limitation.

"II. I conclude that the plaintiffs herein are not entitled to recover any portion of the A. W. Canfield league by reason of the 5-year statute of limitation.

"III. I conclude that the description of the tax deed does not fix and specify any boundaries within the meaning of the 10-year statute of limitation, and especially is said tax deed not sufficient to entitle plaintiffs to recover the entire Canfield league under the 10-year statute of limitation, as said tax deed was for taxes due for the years 1848 and 1849, and that the requirement of the acts of 1848 was that the assessment roll should show the amount of land or the quantity of acres, and the call of the tax deed for 4,000 acres could not be construed to mean the entire league, when there is over 5,-500 acres in the A. W. Canfield league and the tax deed does not show what 4,000 acres of the Canfield league was intended to be sold for taxes for the years 1848 and 1849, and therefore plaintiffs are not entitled to recover the entire Canfield league under the 10-year statute of limitation.

"IV. I conclude that the plaintiffs cannot recover the entire Canfield league by reason of their prior possession, because said prior possession is defeated by proof that certain persons were at least some of the heirs of William Clark, to whom A. W. Canfield conveyed the entire league, and that defendants hold title under these heirs of William Clark through M. A. Watson.

"V. I further conclude that plaintiffs, as a matter of law, are entitled to recover 160 acres of land, the same to include all improvements as the M. Y. Garlington plantation which judgment was then entered by the court."

It will be seen from the above that the court found that plaintiffs had shown title to some interest under William Clark, but made no finding as to what title had been shown. The trial court concluded, as a matter of law, that the plaintiffs could not recover the Canfield survey, because the description in the tax deed to Gilbert Mackechney was insufficient to identify the land. In our judgment, the right to recover by plaintiff under the 10-year statute of limitation depends solely upon the question of description. As we view the record, the adjudication on the proposition as to whether the plaintiffs were entitled to recover under the 10-year statute of limitation, under the aforesaid memorandum, in that the description of the same included the entire Canfield grant, would settle the controversy in this case.

The first assignment of error is as follows:

"The court further erred to the prejudice of the plaintiff in failing and refusing to find that the tax deed from the sheriff of Sabine county to Gilbert Mackechney was insufficient as a memorandum of title under which plaintiffs could deraign title to the A. W. Canfield league under the 10-year statute of limitation."

The propositions under this assignment are:

(a) In construing a description in a voluntary conveyance the same rules of construction apply as to an involuntary conveyance.

(b) A description which is sufficient to render a conveyance valid is also sufficient under the statutes of limitation.

(c) A description in any deed, conveyance, proceeding, or memorandum is sufficient to fix the boundaries of the land, if it points with reasonable certainty to the boundaries of the property intended to be conveyed.

(d) The description in the deed under which plaintiffs held possession which designated the land as the grant originally made to A. W. Canfield constitutes a complete and perfect description of the land.

(e) The deed in question being sufficient by its reference to the grant originally made for A. W. Canfield on the Sabine river in Sabine county is not rendered insufficient by an erroneous call for acreage; but the erroneous element, and especially the mere call for quantity, will, under the settled rule of decision, be discarded as surplusage.

(f) The jury having found that plaintiffs had 31 years' adverse continuous possession of the land in controversy, which is the entire A. W. Canfield survey, and the description in the deed under which the possession was held being sufficient, then as a matter of law plaintiffs are entitled to recover the entire survey as against the defendants, and this court ought to here render the judgment in favor of the plaintiffs for all the land in controversy, except the tract held by the parties claiming under the plaintiffs as shown by the records.

On the contrary, it is contended:

(a) The tax deed to Gilbert Mackechney is confessedly not a title-passing paper, and is not a written memorandum of title "which fixes the boundaries of the possessor's claim," so that the possession may be construed to be coextensive with the A. W. Canfield league in this: That deed, when construed, as every instrument with conflicting descriptions must be; by its language, by the circumstances surrounding it, by the situation of the parties, by the object they had in view and in the light of the connected extrinsic facts, does not embrace the entire league, but refers only to an undesignated, and undefined, uncertain 4,000 acres, the boundaries of which are not fixed or specified; the reference in the deed

to the A. W. Canfield survey not being for the purpose of fixing the metes and bounds of the land conveyed, but to show in what survey the 4,000 acres were contained.

(b) The description of the tax deed does not fix and specify any boundaries within the meaning of the 10-year statute of limitation, and especially is that tax deed not sufficient to entitle the appellants to recover the entire league under the statute of 10 years as the tax deed was for taxes due for 1848 and 1849, and the requirement of the act of 1848 (Acts 2d Leg. c. 139) was that the assessment rolls show the amount of land or the quantity of acres, and the call of the tax deed for 4,000 acres could not be construed to mean the entire league when there is over 5,500 acres in that league, and the tax deed does not show what 4,000 acres was intended to be sold for taxes for the years 1848 and 1849.

(c) The tax deed describes no land, and is void for uncertainty in this: It contains two elements of description, both necessary in order to obtain the land conveyed (4,000 acres "and known as the grant originally made to A. W. Canfield"), and if the land referred to was a survey of 4,000 acres originally made to A. W. Canfield, it could not be the survey of upwards of 5,500 acres made to A. W. Canfield, while if there were two surveys, each "known as the grant originally made to A. W. Canfield," one being the survey of over 5,500 acres in suit and the other of 4,000 acres, then the survey of 4,000 acres sold by the tax collector was not the one involved in this suit.

(d) The tax deed by William Mason, as assessor and collector, for the taxes of 1848 and 1849, was void, in this: For the year 1848 the taxes were levied and the property was assessed under the act of May 13, 1846 (Acts 1st Leg. p. 347) in which act alone is to be found the authority for any levy and sale for the taxes of 1848, the taxpayer was not in default under that act for the taxes of 1848 until January 1, 1849, and not until that date was a levy or sale authorized, but that statute of May 13, 1846, previous to the time appointed by it for making a levy and sale, was repealed by the act of March 20, 1848, because the latter act substitutes new and different provisions for those embraced in the act of 1846, comprehends the entire subject-matter, and of consequence effects an entire repeal of that act, without any provision in it preserving the taxes of 1848, and the right to collect them, but, on the contrary, is prospective only, and provides for the collection of no taxes save those thereafter assessed under its provisions.

(e) The language of the statute of 10 years defining the written memorandum of title under which possession may be taken and held as one "which fixes the boundaries of the possessor's claim," and declaring that such possession under such a registered instrument "shall be construed to be coextensive with the boundaries specified in such instrument," means that the boundaries must be pointed out, particularized, designated by words, specified, so as to identify the land, so that one by examining such an instrument of record may be able to ascertain the precise tract held in possession; and, as this tax deed does not fix or specify boundaries, it cannot support the statute of 10-year limitation.

(f) The proof shows that the appellants and those under whom they claim have not had adverse possession of the entire league as adverse possession is defined by the statute, in this: The possession had by them has not been "under a claim of right inconsistent with and hostile to the claim of another" to the entire league, but only to an undesignated, unascertained, 4,000 acres of the league, that being the extent of their claim, with no boundaries fixed or specified, as required by Revised Statutes, art. 5676.

The situation being thus, and the contentions being outlined as above, we will proceed to examine them with as much brevity as can be used under the circumstances.

[1] With reference to the first contention in the case, that is, that a description in a voluntary conveyance is covered by the same rules of construction which apply to an involuntary conveyance, the holding of the courts, as we construe them, are in accord, that is to say, the case of Hermann v. Likens, 90 Tex. 448, 39 S. W. 282, in which Judge Gaines delivered the opinion, and in which he announced the rule, is still the law in this state, and as we read the opinions by the other courts, there is no conflict between them and between the case of Hermann v. Likens. This opinion contains the following language:

"This brings us to the merits of the case. As to the half interest in the land in controversy between the plaintiff in error and defendants in error, J. B. Likens was the common source of title. The plaintiff in error claimed under a sale of the land made by the administrator of Likens, and the defendants in error claimed title as his heirs. The question is, Was the sale valid? This depends upon the description of the land given in the proceedings of the county court and in the administrator's deed. Defendants in error insist that it is vague and uncertain, and therefore insufficient to pass the title. In Hurley v. Barnard, 48 Tex. 83, it is held 'that the description in the order of sale may be aided by the inventory and other matters of record, pertaining to the administration.' See, also, Davis v. Touchstone, 45 Tex. 490. The land in controversy is an undivided one-half interest in 893 acres in Harris county, a part of the headright survey of Pleasant W. Rose; and in the inventory, the petition for an order of sale, the report of sale, the order of confirmation, and in the administrator's deed it is substantially so described. It was not placed upon the original inventory, but in an additional list of assets the administrator reports to the court that since his first inventory he had 'discovered the following described real estate belonging to his intestate,' etc. Then follows a list of lands

and lots in which is found the property in controversy as above described. In the petition for the order of sale he also reports that in obedience to a previous order of the court he had sold 'the following described property, belonging to the estate of J. B. Likens, deceased,' etc. (giving a list of the property), and that the purchasers had failed to comply with the terms of the sale. He therefore prayed the order to resell it. In the list appears the undivided interest in the tract in controversy, described as above. The order of sale recites the substance of the petition, and orders the administrator to resell the property therein described. It also copies the list of lands to be sold from the petition. This order was made at the January term, 1881, of the court, and at the March term next thereafter an order of confirmation was entered, in which the report of the sale is copied, and it is recited that it is a report of the sale of the property belonging to the estate. The report is of 'a sale of property in this estate hereinafter set forth,' and purports to have been made in pursuance of the order passed at the January term. It contains also a full list of the property, and includes the land in controversy as first above described. The administrator's deed is not copied into the transcript. It merely appears from the statement of facts that there was introduced in evidence a deed from the administrator which conveyed to the purchaser a '½ interest in and to 893 acres of the P. W. Rose survey in Harris county.' The statute requires that the deed of an administrator to land shall contain a copy of the order of confirmation. It is to be presumed that the administrator did his duty, and that the order was copied in the deed. It is evident from these proceedings that the land which was ordered to be sold, and which was sold and conveyed by the administrator, was not vaguely an undivided interest in 893 acres of the P. W. Rose survey. It was the interest of the estate of J. B. Likens, deceased, in a certain tract of 893 acres, a part of the Rose survey, of which he owned an undivided one-half. If the Rose survey contained only 893 acres, there would have been less difficulty about the description, but it embraces a league and labor of land. Is this description sufficient to pass the title by virtue of a probate sale? That it would be sufficient in a voluntary conveyance, we think, there can be no doubt. Smith v. Westall, 76 Tex. 509, 13 S. W. 540. Between the owner and his grantee, if from the facts given in the description in the deed the property intended to be conveyed can be identified with certainty, it is sufficient. What is a certain description in a voluntary conveyance is necessarily certain in a sheriff's or administrator's deed, and it would seem, therefore, that there should be no distinction in this respect between voluntary and involuntary conveyances, and there is high authority for so holding. In White v. Luning, 93 U. S. 514 [23 L. Ed. 938], the court say: 'In regard, however, to the description of the property conveyed, the rules are the same, whether the deed be made by a party in his own right or by an officer of the court. The policy of the law does not require courts to scrutinize the proceedings of a judicial sale with a view to defeat them. On the contrary, every reasonable intendment will be made in their favor, so as to secure, if it can be done consistent with legal rules, the object they were intended to accomplish.' See, also, Marshall's Lessee v. Greenfield, 8 Gill & J. [Md.] 358 [29 Am. Dec. 559]. We have in the opinions of our court some intimations of a contrary doctrine, though the point has probably not been definitely decided. Norris v. Hunt, 51 Tex. 609; Brown v. Chambers, 63 Tex. 131. In the case last cited, in speaking of a sheriff's deed, it is said: 'In our opinion the reference to the county records for description and identification must be limited

to the conveyances referred to in the sheriff's deed.' The remark was hardly called for in that case, and we do not accede to the proposition. Without giving field notes or boundaries, or referring to other conveyances which contain such description, a tract of land may be so definitely pointed out that it may be unmistakably identified. It may be that a description, though capable of being made certain and therefore good in a voluntary conveyance, may point out so remotely the property to be conveyed that it should be held insufficient where the property of the owner is sought to be conveyed by a judicial sale. For example, a deed to 'all the grantor's land in a certain county' naming it, will convey all his lands situate in that county. Such a description in an administrator's or sheriff's deed ought, at least, to be a good ground for setting aside the sale. The description in a conveyance of the latter class ought to be sufficiently definite to enable the bidders to ascertain without unreasonable trouble the precise tract of land to be sold. When this is accomplished, we think the requirement of the law is met. It was upon this principle that Wilson v. Smith, 50 Tex. 365, was decided, and the ruling in that case is sustained by the great weight of authority. The cases sustaining the doctrine are stated in 2 Freem. Ex'ns, § 330, and are too numerous to be set forth in detail in this opinion. We note that the cases of Hill v. Wall, 66 Cal. 130, 4 Pac. 1139, and Crosby v. Dowd, 61 Cal. 557, which assert a different rule, have been overruled. De Sepulveda v. Baugh, 74 Cal. 468, 16 Pac. 223 [5 Am. St. Rep. 455]. The rule as to descriptions in judicial sales announced by the Supreme Court of Minnesota seems a reasonable one. In Herrick v. Ammerman, 32 Minn. 544, 21 N. W. 836, that court held that 'lot 5, in block 39,' without stating in what town or city, was an insufficient description in such a sale; and in Herrick v. Morrill, 37 Minn. 250, 33 N. W. 849 [5 Am. St. Rep. 841], in passing upon a similar question and referring to the former case, the court say: 'In what was said in Herrick v. Ammerman, we did not mean to intimate that to constitute a good description on a sale in execution of a statutory power it must be such that from a mere inspection of it the court would know what land was intended. Nor did we intend to be understood that parol evidence of extrinsic facts and circumstances was not admissible to apply the description or identify the premises described. All that was intended to be held was that the land should be described with sufficient certainty to enable all parties to identify it, and know what was being sold; that in cases of the execution of a statutory power, when the owner of the land intends nothing, and the law through its officers acts in hostility to him, you cannot aid or help out an inherently insufficient description by extrinsic evidence tending to prove what the officer probably intended to sell. In these sales the policy of the law requires, not that there should exist the means of showing at some future time what is otherwise indefinite and uncertain, but that, at the time of the sale, it should be within the power of all who are by the notice invited to become bidders to know what was offered, and that it should not be left to be surmised or guessed at some future time as to what the officer intended to sell.' "The description in the present case is, in substance, a half interest in the property of the estate of the intestate in 893 acres of land, a part of the P. W. Rose survey, in Harris county, Tex. This does not indicate, as in Wofford v. McKinna, 23 Tex. 36 [76 Am. Dec. 53], that the intention was to sell a half interest in an undefined part of the Rose survey, but an undivided half of a certain tract in which the intestate owned that interest. * * * Here a purchaser without knowledge of the facts would have had to seek the deed under which Likens

claimed, and he would have ascertained the field notes of the tract in controversy. This is but one step further than he would have been compelled to go had the field notes been embodied in the description itself. He had the same method of ascertainment as if the description had been of a certain lot in a certain block in a specified town or city. Here the tract of 893 acres, a part of the Rose survey, in which tract J. B. Likens at the time of his death owned an undivided one-half interest, could have been made certain by reference to the deed to Likens and Shepherd, which was offered in evidence and under which the plaintiffs, now defendants in error, claimed; and hence the description would have been good in a voluntary conveyance. The generality of the description was not, in our opinion, such as to deter bidders from making such inquiry as would necessarily have led to the definite ascertainment of the premises to be sold, and we therefore think it a sufficient description in an administrator's sale."

To the same effect is the decision in the case of Waterhouse v. Gallup, 178 S. W. 773, in which the following language is used:

"In determining the question of whether the description of land contained in a conveyance is void for uncertainty the test is whether the land can, by the aid of extrinsic evidence, be identified from the description given in the conveyance. A very brief description is often sufficient to identify an object. If one owns only one farm or one tract of land of 100 acres, a deed by such person describing the land sold as 'my farm or my tract of 100 acres,' and giving the county in which it is situated, sufficiently describes the land. The application of the description to the land conveyed by a deed must always be shown by extrinsic evidence. In the case supposed, when it is shown that the grantor in the deed owns only one farm or one tract of 100 acres in the county named, and the boundaries of the farm or tract of land are known and established, the description in the deed identifies the land sold with absolute certainty, and this would be true if the conveyance was of any named undivided interest in the farm or tract of land. Unless, from an inspection of the deed, it appears that the description is so indefinite and uncertain that it cannot, by extrinsic evidence, be made to apply to any definite land, the deed is not void for insufficiency of description. Wilson v. Smith, 50 Tex. 365; Hermann v. Likens, 90 Tex. 448, 39 S. W. 282; Pierson v. Sanger, 93 Tex. 163, 53 S. W. 1012. This rule is applicable to judicial as well as to voluntary sales. In sales of the former character, a description, though sufficient to identify the land, may be so meager or misleading as to affect the price brought at the sale, and in a direct proceeding brought for that purpose would be ground for setting the sale aside. Sanger v. Roberts, 92 Tex. 317, 48 S. W. 1; Gallup v. Flood, 46 Tex. Civ. App. 644, 103 S. W. 426."

Therefore we hold, on the first proposition with appellants, that in construing a description in a voluntary conveyance the same rules of construction apply as to an involuntary conveyance.

[2] As to the sufficiency of description to render a conveyance valid under the statutes of limitation, the language of the statute itself (article 5676, Vernon's Sayles' Statutes, 1914) is as follows:

"The peaceable and adverse possession contemplated in the preceding article, as against the person having a right of action, shall be construed to embrace not more than 160 acres, including the improvements or the number of acres actually inclosed, should the same exceed 160 acres, but when such possession is taken and held under some written memorandum of title, other than the deed, which fixes the boundaries of the possessor's claim, and is duly registered, such peaceable possession shall be construed to be coextensive with the boundaries specified in such instrument."

In the case of Noland v. Weems, 141 S. W. 1031, the following language is used by Chief Justice Peticolas:

"It is next contended by the plaintiffs in error, the trial court having submitted an issue of 10-year limitation in favor of the defendant in error, that the testimony was not sufficient to raise an issue of 10-year limitation in favor of defendant in error, and that, if the testimony was sufficient to raise such issue, the description in their deeds was not sufficient, in that the deed to Fornish did not describe any land by metes and bounds so as to identify it or so as to be a basis for limitation title to any specific tract; that the claim of limitation for 10 years where possession did not extend to the boundaries of the tract would, under the statute, only go to the extent of 160 acres, and that the deed to Fornish did not so describe the 400 acres as that the possession could extend to more than the 160 acres. * * *

"Plaintiffs in error contend that, as there are no boundaries fixed and delineated in the deed to Fornish, the description in said deed is insufficient to extend defendant in error's actual possession to the limits of the land sued for by him, and that his possessory title, if any, should be confined to the 160 acres allowed by the statute; that as he did not describe any 160 acres, the charge submitting the issue of 10 years' limitation in favor of defendant in error was erroneous, and the case should be reversed on that ground. This presents to our minds the most difficult question in the case. In Crumbley v. Busse, 11 Tex. Civ. App. 323, 32 S. W. 438, it was held that a tax deed, void on its face and patently ambiguous, could not be used under the 10-year statute 'as a written memorandum other than a deed which fixed the boundaries of the possessor's claim.' It is evident that this decision does not apply, since we have held that the deed to Fornish was not patently ambiguous nor void. In Doom v. Taylor, 35 Tex. Civ. App. 251, 79 S. W. 1086, it was held that one in possession of 218 acres, whose title was divested by sheriff's sale, could not claim under the 10-year statute to more than his actual possession after the said divestiture by said sheriff's sale. In Pearson v. Boyd, 62 Tex. 541, it was held generally that a mere adverse possession will be limited to the boundaries actually embraced in the deed. In the case of Carley v. Parton, 75 Tex. 101, 12 S. W. 950, it is very difficult to ascertain the exact holding. Stating it most strongly in favor of plaintiffs in error, it is to the effect that a description 'the north half of the southwest one-quarter' is not sufficient to fix the boundaries under the 10-year statute. These are the only cases that have been cited or which we have been able to find on the 10-year statute. As applicable to the 5-year statute of limitation, there is in this state a long line of decisions, of which the case of Young v. Trahan, 43 Tex. Civ. App. 611, 97 S. W. 147, is illustrative. In that case it was held that under the 5-year statute a description which required extrinsic evidence to locate it will not answer the purposes of the statute, and cannot be considered a deed duly registered. In Cantagrel v. Von Lupin, 58 Tex. 570, it was held that a description of the land as 'being all the land I own in Harris county' was sufficient under the 5-year statute, and in Bowles v. Brice, 66 Tex. 724, 2 S. W. 729, it was held that all the interest acquired under a certain deed was sufficient description.

"It seems to us that the rule announced in Young against Trahan is to some extent falla-

cious. To illustrate: A description of lot 2 in block 6 in the Alenander addition in the city of El Paso would clearly be sufficient, under the 5-year statute, as a deed fixing the boundaries and description of that property, and yet, it is apparent that extrinsic evidence would have to be resorted to to locate said lot and block. Again, a description of a survey to commence at a marked corner, something extrinsic of the deed, would have to be resorted to; the marked corner would have to be located on the ground. These illustrations are used not as indicating that the case of Young against Trehan is wrong in result, but as indicating our belief that the true test of the sufficiency of a description to extend actual possession constructively to the boundaries of a tract under either the 5 or 10 year statute is that it should be sufficient to give notice to the true owner of the point to which the holder of such deed is claiming. We think, also, in this connection that the maxim, 'That is certain which can be made certain,' applies; and, applying these rules to this particular case, in so far as the defendant in error claims title by limitation by the possession of Fornish and those holding for him, it is apparent that the true owner was notified that he claimed a tract of land commencing at the Marshall east line, running thence easterly between the northern lines of the league and the bayou far enough to include 400 acres. It is apparent that the Marshall east line was well defined, marked, and located on the ground. The ascertainment of the exact limits which Fornish and those holding for him claimed was merely a matter of mathematical calculation. It may be said that the description is insufficient for the purpose indicated, because the true owner would have to go on the ground, yet, if the description were by metes and bounds, commencing at a marked corner, he would have to go on the ground. Does it not follow that the description must be such as to give the true owner notice of what land is claimed, and that he can locate the same on the grouud? We therefore hold that the description was sufficient to constructively extend the possession of those holding for Fornish to the limits of the 400 acres."

We believe what was said in the above case can be more truly said of the case now under advisement, and that the description in the deed in the instant case is sufficient, under the 10-year statute of limitation, to hold constructive possession of the land included within the boundaries of said description.

With reference to the third proposition, without going over the same in detail, we hold that a description in this memorandum is sufficient to fix the boundaries of the land, and that it points, with reasonable certainty, to the boundaries of the property intended to be conveyed. See Camley v. Stanfield, 10 Tex. 546, 60 Am. Dec. 219; Berry v. Wright, 14 Tex. 270; Farris v. Gilbert, 50 Tex. 350; Norris v. Hunt, 51 Tex. 609; Harris v. Iglehart, 52 Tex. Civ. App. 6, 113 S. W. 170. The authorities hold that in cases in which the property is conveyed by reference to a grant, will, in effect, write into the deed the field notes of the grant and render the same a part of the description. Clifton v. Creason, 145 S. W. 323; Scott v. Stay, 12 S. W. 673.

It follows from what we have said that it would be unreasonable to say that a deed calling for and describing the A. W. Canfield

197 S.W.—48

grant on the Sabine river in Sabine county, Tex., could be defeated for the sole reason that the acreage called for was erroneous. It seems to be evident, not only from the agreement of the parties, but from the record, that there is more than 5,500 acres in the A. W. Canfield grant. We have reached the conclusion that, merely because the description calls for 4,000 acres, it does not render it void, for it will be equally erroneous, if the description calls for 6,000 acres, or any other number of acres, save and except the exact acreage by an actual survey on the ground. The language as used is:

"The grant originally made for A. W. Canfield on the Sabine river in Sabine county, Texas."

There can be no question that includes all of said grant, and that if there was any error, it was in the description of the acreage. It has been held, and we think correctly so, that the call for acreage is of no consequence, and should be disregarded, as though it had never been mentioned therein. In 5 Ruling Case Law, p. 1081, the following language is used:

"A conveyance of a tract by a name acquired by reputation will pass the title, and a tract having two names may be described by either, though one is the true name by which it was patented, and the other a name acquired only by reputation, nor will a mistake in spelling the name of a tract of land vitiate the instrument if the word misspelled resembles in sound or sense the right name. A grant of a known tract by name is not void because, through error, the quantity is materially understated, and where a specified tract of land is named the entire tract passes, although it exceeds the quantity mentioned."

See Washburn on Real Property, par. 2322; Jones on Real Property, par. 399; Jordon v. Young, 56 S. W. 762, in which latter case the court says:

"It is well settled that when boundaries of a parcel of land are defined, a statement of the quantity of the land does not generally have any effect; such statement is considered merely as descriptive, and, as the quantity is the least certain part of description, that must yield to the boundaries, or other definite description by name or number, or by map of survey."

We have discussed briefly the propositions and counter propositions of appellants and appellees. To discuss them at length would be to render this opinion too lengthy. The jury, therefore, having found that plaintiff had 31 years' adverse, continuous possession of the land in controversy, which is the entire A. W. Canfield survey, and the description in the deed under which the possession was held being sufficient, it is our judgment that plaintiffs are entitled to recover the entire survey, as against the defendants, and judgment is here rendered in favor of the plaintiffs for all of the land in controversy, except the tract held by the parties claiming under the plaintiffs, as shown by the record. Outstanding titles are shown in L. L. Hill by deed shown on page 298 of the record, and recorded in volume E, p. 8, of the Deed Records of Sabine County; in O. H. Martin,.

by deed recorded in volume O, p. 297, Deed Records of Sabine County; in H. L. Taylor by deed recorded in volume K, p. 517, Deed Records of Sabine County, and on page 305 of this record; in deed to McGee Bros. recorded in volume R, p. 472, Deed Records of Sabine County, and as shown on page 306 of this record; deed to H. L. Dainwood and C. L. Love, recorded in volume K, p. 518, Deed Records of Sabine County, shown on page 308 of this record; deed from M. E. Mackechney, to A. H. Martin, recorded in volume K, p. 514, Deed Records of Sabine County, shown on page 310 of this record.

A careful reading of the record satisfies our minds, beyond controversy, that the first assignment of error should be sustained.

[3] What we have said disposes of the case. It is not necessary, therefore, to consider the other assignments, with reference to the admissibility of the testimony of Goodrich, with reference to his relationship to the family of William Clark. In other words, his grandmother was a second cousin to the husband of a granddaughter of the party whose heirship was to be proved. This testimony, in our opinion, was not admissible, and should not have been admitted. We believe the law to be that a declaration of general reputation among persons other than members of the family as to the heirship or other facts of pedigree connected with that family are inadmissible. In the case of Gibson v. Dickson, 178 S. W. 44, the matter is gone into.

Many interesting propositions and counter propositions under the various assignments, other than the one disposed of, are submitted, but however interesting they might be to the profession, they could not in any wise change the decision in this case, as above stated. In our opinion, there is no question whatever that the description in the tax deed was sufficient, tested by the rules laid down by the courts of this state; that the verdict of the jury with reference to the possession under the deed not only entitled, but demanded, that the judgment of the court based thereon should have been that the plaintiffs recover the entire amount of the league, as sued for.

With reference to the law governing the tax collector's duty in the premises, in 1848, and 1849, as said before, these are matters that do not become material in the decision of this case. If the description is sufficient or can be made sufficient, it will uphold the 10-year statute of limitation, and uphold the possession as abundantly found by the jury. We are of opinion that the judgment of the lower court was erroneous; that it should have been for plaintiff for all of the land in controversy, save and except those items heretofore mentioned, and judgment here, and now is rendered, reversing the judgment of the court below, and here rendering judgment for the appellants.